[677 NYS2d 531]

JAY HOAG et al., Appellants, v CHANCELLOR, INC., et al., Respondents.

First Department, August 20, 1998

## APPEARANCES OF COUNSEL

*Martin Flumenbaum* of counsel, New York City (*Daniel J. Kornstein, Eric S. Goldstein, Hillary B. Smith* and *Emily Rosdeitcher* on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison*, and *Kornstein Veisz & Wexler, L. L. P.,* attorneys), for appellants.

*Bettina B. Plevan* of counsel, New York City (*Peter J.W. Sherwin* and *Katya T.P. Jestin* on the brief; *Proskauer Rose, L. L. P.,* attorneys), for respondents.

**OPINION OF THE COURT**

SULLIVAN, J. P.

This is an appeal from the dismissal, pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, of plaintiffs' third and fourth causes of action for tortious interference with contract and conspiracy, respectively. Plaintiffs, two former executives of Chancellor, Inc. and Chancellor Capital Management, Inc. (collectively Chancellor), who worked in Chancellor's Alternative Asset Management Group (AAMG), sue Chancellor and Warren Shaw, Penny Zuckerwise, Robert Wade and Parag Saxena (the individual defendants), at all times relevant herein Chancellor executives, alleging as against the individual defendants that they knowingly and intentionally interfered with employment-related contracts between plaintiffs and Chancellor and conspired to deprive plaintiffs of their rights and entitlements under the contracts.

On April 1, 1992, in conjunction with a management buyout, plaintiffs, who had been Chancellor employees for some time, entered into written contracts continuing their employment from that date until December 31, 1994 as executive employees and members of AAMG, whose specialty was the investment of venture-capital funds. The contracts provided that plaintiffs were to receive compensation, consisting of a minimum base salary, bonus and incentive fees and carried interests. Incentive fees are monies received by AAMG for investments, typically made several years before, in private companies, and reflect the efforts of AAMG's individual members, who would raise the funds and then invest them. According to plaintiffs, it was understood by the parties that such fees would be paid to the AAMG personnel who helped generate them, even though they might no longer be employed by Chancellor. Such understanding, it is alleged, was a matter of custom and usage among venture-capital investment professionals and at Chancellor. Consistent with such a practice, both plaintiffs, contemporaneously with the signing of their employment contracts on April 1, 1992, entered into an agreement set forth in a side letter, dated April 3, 1992 and signed by the plaintiffs, as well as Craig Foley, the then group head of AAMG, and individual defendants Saxena and Wade, Chancellor's chairman, covering the distribution of incentive fees and carried interest

fees. The side letter expressly provides that "75% of the [incentive fees and carried interest fees received through December 31, 1996] shall be distributed to employees in [AAMG]" and that "[AAMG's] head will allocate the [f]ees among employees of [AAMG] with the consent of [Chancellor's Chairman] or [his] successor, which shall not be unreasonably withheld." The side letter further provides that the "[AAMG] head may give consideration to payment of [f]ees to departed key employees of [AAMG], except those terminated * * * for cause or those key employees who terminate without good reason," subject to the Chancellor Chairman's consent, "which shall not be unreasonably withheld." Chancellor paid incentive fees to defendant Saxena after he left AAMG on the recommendation of Foley.

In their complaint, plaintiffs allege a scheme by defendants to oust plaintiffs from their positions with Chancellor, to deprive them of their bonus and incentive fees compensation and to seize the benefits for themselves. In furtherance of this scheme, plaintiffs allege, defendants engaged in a course of conduct designed to force plaintiffs to leave Chancellor by, *inter alia*, removing the management of the "Small Cap Assets" group from AAMG, thereby diminishing plaintiffs' responsibilities and reducing their potential for future incentive fee compensation. They also claim that the individual defendants disagreed with the recommendations made by the AAMG group head regarding plaintiff Hoag's bonuses and repeatedly withheld incentive fee payments from plaintiffs or paid them in an untimely manner.

In granting the individual defendants' motion to dismiss the tortious interference with contract cause of action—the third cause of action—the IAS Court correctly noted that "corporate officers may not be charged with tortious interference unless they acted outside the scope of their authority by committing an independent tort or by acting for personal profit aside from the corporation's interests", but held, "No such allegation has been made here." The court dismissed the fourth cause of action, alleging a conspiracy among the individual defendants, because "it was dependent on plaintiffs' claim for tortious interference with contract." Furthermore, while the court denied dismissal of the first and second causes of action for breach of the employment agreement and side letter agreement, respectively, it rejected plaintiffs' argument that parol evidence and evidence of industry custom and usage would show that incentive fees and carried interests are customarily paid to departed employees and barred such testimony on the

ground that since the contract was unambiguous, parol evidence was inadmissible. We modify to reinstate the cause of action for tortious interference with contract.

The standard for determining a CPLR 3211 (a) (7) motion is well settled. If a "plaintiff is entitled to a recovery upon any reasonable view of the stated facts", the complaint is legally sufficient and the motion must be denied. (*219 Broadway Corp. v Alexanders, Inc.*, 46 NY2d 506, 509.) "Whatever an ultimate trial may disclose as to the truth of the allegations, on such a motion, a court is to take them as true and resolve all inferences which reasonably flow therefrom in favor of the pleader." (*Sanders v Winship*, 57 NY2d 391, 394; *see also, Barr v Wackman*, 36 NY2d 371, 375.)

The elements of a tortious interference with contract claim are well established—the existence of a valid contract, the tortfeasor's knowledge of the contract and intentional interference with it, the resulting breach and damages. (*John R. Loftus, Inc. v White*, 150 AD2d 857, 859.) Here, the complaint alleged that the individual defendants intentionally interfered with the employment contracts and the side letter agreement by, *inter alia*, diminishing plaintiffs' responsibilities and prospects for future incentive fee compensation, freezing plaintiff Hoag's salary and unreasonably disagreeing with the AAMG group head's recommendations regarding his bonuses, repeatedly withholding and delaying payment of incentive fees due plaintiffs and, after their departure from Chancellor, unreasonably withholding consent for the AAMG group head's recommendations for incentive fee payments to plaintiffs based on their contributions to the values created that gave rise to the incentive fees. Thus, the complaint asserted the essential elements of a tortious interference with contract claim.*

To establish a corporate officer's liability for inducing a breach of a contract between the corporation and a third party, the complaint "must allege that the officers' * * * 'acts were taken outside the scope of their employment or that they personally profited from their acts'." (*Courageous Syndicate v People-To-People Sports Comm.*, 141 AD2d 599, 600, quoting *Citicorp Retail Servs. v Wellington Mercantile Servs.*, 90 AD2d

---

* The tortious interference cause of action can stand against defendant Saxena only insofar as it claims tortious interference with the employment agreement. There can be no claim against Saxena for tortious interference with the side letter agreement as Saxena was a party to that agreement and no claim for tortious interference can be made against a contracting party. (*See, Winicki v City of Olean*, 203 AD2d 893, 894.)

532.) *Buckley v 112 Cent. Park S.* (285 App Div 331), cited favorably by the Court of Appeals in *Murtha v Yonkers Child Care Assn.* (45 NY2d 913, 915), involved a claim that the corporate officer defendants conspired to deprive plaintiff of his commissions. This Court, in finding that the complaint sufficiently pleaded a cause of action for tortious interference, stated, "[W]hen, if as here, the officer commits fraudulent, deceitful acts motivated by a personal desire for monetary gain at the expense of the plaintiff, we see no reason to shroud him with a mantle of immunity upon the fictitious theory that he was protecting the interests of the corporation, its stockholders and creditors in the performance of his duties as a corporate officer." (285 App Div, *supra*, at 335.)

Here, plaintiffs allege that the individual defendants sought to oust them and deprive them of benefits, particularly incentive fees, "with the malicious and improper purpose of seizing those benefits for themselves", since incentive fees, otherwise due, but not paid to plaintiffs, would be distributed to the individual defendants. The complaint alleges further that, in doing so, the individual defendants "each exceeded the scope of his or her respective authority."

The pivotal issue on appeal arises over the IAS Court's holding, subscribed to by the individual defendants, that a corporate director or officer exposes himself to liability only when he acts for personal profit "aside from" corporate interests, that is, that he act solely out of self-interest. According to defendants' formulation, when the corporate officer or director acts with a mixed motive, that is, partially for self-interest and partially in the corporation's interests, he is insulated from liability.

The sole purpose language is found in this Court's 1956 one-paragraph memorandum affirmance in *Ehrlich v Alper* (1 AD2d 875, citing *Buckley v 112 Cent. Park S., 285* App Div 331, *supra*), which contained no such statement of the rule. In *Herald Hotel Assocs. v Ramada Franchise Sys.* (191 AD2d 288), this Court held that a corporate officer could be "held accountable, regardless of whether he acted in furtherance of the interests of [the] corporation" in part because he acted "in his own best interests". (*See, Courageous Syndicate v People-To-People Sports Comm., supra,* 141 AD2d, at 600; *Citicorp Retail Servs. v Wellington Mercantile Servs., supra,* 90 AD2d, at 532; *see also, Bank of N. Y. v Berisford Intl.,* 190 AD2d 622.)

The requirement that a corporate officer's or director's acts of self-interest be "aside from the corporation's interests" would

appear to be a purely superfluous way of stating the obvious—that such officer or director is liable when he acts for his personal, rather than the corporate interests. (*See*, 72 NY Jur 2d, Interference, § 19.) In any event, if the "aside from" requirement is construed to mean "against" the corporate interest, the complaint, fairly read, contains allegations sufficient to satisfy such a requirement. Plaintiffs allege that the individual defendants' actions "threatened [plaintiffs'] ability to continue to provide superior performance for clients." Thus, the IAS Court erred in dismissing the third cause of action alleging tortious interference with contract.

■ The IAS Court dismissed the conspiracy cause of action, which alleged that the individual defendants intentionally participated in a common scheme to deny the payment of incentive fees to plaintiffs and divert them instead to said defendants, because it was dependent upon the tortious interference claim that the court had found defective. Although the court's reasoning was faulty, the conspiracy cause of action was properly dismissed. The courts of this State do not recognize an independent tort of conspiracy. (*Alexander & Alexander v Fritzen*, 68 NY2d 968, 969; *Burns Jackson Miller Summit & Spitzer v Lindner*, 88 AD2d 50, 72, *affd* 59 NY2d 314.) "The allegation of a civil conspiracy, without more, does not in and of itself give rise to a cause of action. The actionable wrong lies in the commission of a tortious act, or a legal one by wrongful means, but never upon the agreement to commit the prohibited act standing alone." (*Cuker Indus. v Crow Constr. Co.*, 6 AD2d 415, 417.)

While allegations of conspiracy cannot form the basis of an independent cause of action, New York law permits allegations of conspiracy when they "serve to enable a plaintiff to connect a defendant with the acts of his co-conspirators where without it he could not be implicated" (*supra*, at 417), i.e., when they "connect a defendant to an otherwise actionable tort" (*Buccieri v Franzreb*, 201 AD2d 356, 358). Accordingly, the allegations in the complaint herein charging conspiracy are deemed part of the remaining causes of action to which they are relevant.

■ Finally, in an effort to prevent evidentiary error in any subsequent proceedings, we note our disagreement with the IAS Court's ruling with respect to custom and usage on the question of whether consent to the payment of incentive fees to departed employees was unreasonably withheld. The use of such parol evidence was not for the improper purpose of interpreting or varying an agreement without ambiguity, as

the IAS Court misperceived, but for the permissible purpose of providing guidelines for the unexplained term, "unreasonably withheld." Indeed, the standard for determining whether consent was unreasonably withheld is an objective one. (*F.H.R. Auto Sales v Scutti*, 144 AD2d 956.) In determining whether conduct is objectively reasonable, industry norms may be appropriately considered. (*See, e.g., Royal Bank v Beneficial Fin. Leasing Corp.*, 1992 US Dist Lexis 9496 [SD NY, June 30, 1992, Cannella, J.]; *Greenwood v Koven*, 880 F Supp 186, 198, n 10 [SD NY].)

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered on or about March 26, 1997, which *inter alia*, granted the individual defendants' motion to dismiss the third and fourth causes of action against them, should be modified, on the law, the motion to dismiss the third cause of action denied, the third cause of action reinstated, and, except as thus modified, affirmed, with costs and disbursements payable to plaintiff.

ELLERIN, NARDELLI, RUBIN and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered on or about March 26, 1997, modified, on the law, defendants' motion to dismiss the third cause of action denied, the third cause of action reinstated, and except as thus modified, affirmed, with costs and disbursements payable to plaintiff.