**In the Matter of EAGLE ENTERPRISES, INC., and Liberty Recovery Systems, Inc.**

**No. Civ.A. 00–1231.**
**Bankruptcy Nos. 98–11297, 98–11298.**

United States District Court,
E.D. Pennsylvania.

May 21, 2001.

Mark E. Felger, Cozen and O'Connor, Philadelphia, PA, for Eagle Enterprises, Inc. and Liberty Recovery Systems, Inc., debtors.

Gary Francis Seitz, Philadelphia, PA, Stephen M. Calder, Palmer, Biezup &

Henderson, Philadelphia, PA, Gary D. Sesser, Carter, Ledyard & Milburn, New York City, for Interpool Limited, appellant.

## *MEMORANDUM*

WALDMAN, District Judge.

### I. *Introduction*

This is an appeal from an Order of the United States Bankruptcy Court denying the request of Interpool Limited ("Interpool") and Trac Lease, Inc. ("Trac") for relief from the automatic stay currently in effect in this bankruptcy proceeding. Appellants petitioned the Bankruptcy Court for relief from the automatic stay to assert claims against USA Waste, Inc. ("USA Waste") in a New York state court. The Bankruptcy Court determined that appellants' proposed causes of action were subject to the automatic stay and declined to allow them to pursue these claims.

### II. *Standard of Review*

 This court has appellate jurisdiction over final orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1) and reviews *de novo* that Court's conclusions of law. *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 304 (3d Cir.1999); *In re Equipment Leassors of Pennsylvania*, 235 B.R. 361, 363 (E.D.Pa.1999). The Bankruptcy Court's findings of fact are reviewed for clear error. *Id.;* Fed. R.Bankr.P. 8013. The decision of whether or not to modify an automatic stay falls squarely within the Bankruptcy Court's discretion and is reviewed for abuse thereof. *See In re Wilson*, 116 F.3d 87, 89 (3d Cir.1997); *Matter of Lippolis*, 228 B.R. 106, 112 (E.D.Pa.1998). *See also In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir.1990).

### III. *Factual Background*

The pertinent facts are as follows.

Before filing for bankruptcy protection, the debtors, Eagle Enterprises, Inc. ("Eagle") and Liberty Recovery Systems, Inc. ("Liberty"), were engaged in the waste management business.[1] Both Liberty and Eagle were closely held corporations owned by Sonya and Patricia Ferro. Robert Ferro, the husband of Sonya and father of Patricia, was the director of operations of Liberty and Eagle. Appellants are unsecured creditors of Eagle and Liberty based upon a series of leases between March and July of 1997 for "open top" and "dry van" containers and chassis.

In January 1995, Liberty entered a "Confidentiality Agreement" with USA Waste pursuant to which Mr. Ferro, with the intent of securing business from USA Waste, disclosed to USA Waste his proposed innovative system for transporting waste from the Philadelphia area by barge to Virginia. As part of this plan, debtors leased a parcel of land on the Philadelphia waterfront (the "State Road property") which it used in its barging operation. Mr. Ferro planned to purchase this property and hired the law firm of Blank, Rome, Comiskey and McCauley ("Blank Rome") to facilitate the purchase. In February 1996, Liberty entered into a "Waste Disposal Agreement" with Chambers Development of Virginia, Inc. ("Chambers"), a subsidiary of USA Waste, which gave Liberty the right to dispose of quantities of municipal solid waste for a period of two years with optional extensions for three one year periods.

From March until July 1997, both Trac and Interpool entered a series of lease agreements with Liberty pursuant to which Interpool agreed to lease 500 open top containers and 275 dry van containers to Liberty for a five year period and Trac agreed, *inter alia*, to lease 270 newly manufactured 40 foot gooseneck chassis to Liberty also for a five year period (collectively the "equipment leases"). Appellants aver that they agreed to enter the equipment leases based upon debtors' procurement of the Waste Disposal Agreement which had an estimated value of $24 million.

On August 22, 1997, Eagle and USA Waste entered a written agreement, retroactive to July 15, 1997, known as the Master Agreement, Transportation Arrangement and $1,000,000 Revolving Loan Facility by and between USA Waste as lender and Eagle as borrower ("Transportation Agreement"). The Transportation Agreement provided that Eagle would transport solid waste exclusively for USA Waste which would pay for a minimum amount of tonnage per week regardless of whether their demands met that minimum. Part of the consideration demanded by USA Waste for entering the Transportation Agreement with Eagle was the cancellation of both the Waste Disposal Agreement between Liberty and Chambers and the Confidentiality Agreement between Liberty and USA Waste.

Appellants became insecure about their leases with debtors in the summer of 1997. Their fears were assuaged by a letter from USA Waste to all creditors dated August 13, 1997 assuring that the Transportation Agreement would be consummated forthwith. In fact, by late summer of 1997 the debtor owed $4,871,568 to Interpool and $2,491,182 to Trac which was never paid.

Apparently to protect USA Waste's $1,000,000 loan to Eagle, the Transportation Agreement granted USA Waste considerable oversight over Eagle's affairs. This included: (i) requiring USA Waste's

---

1. Eagle and Liberty will be referred to by name individually or collectively as "debtors" as appropriate. Their interests with regard to this case are virtually identical and it is not always clear from the record which entity engaged in specific conduct.

approval of any changes in management or ownership of Eagle or the location of Eagle's operations; (ii) precluding Eagle from engaging in any business other than the transportation of solid waste or from transporting waste to any site other than those designated by USA Waste; (iii) requiring Eagle to solicit waste disposal customers and refer them to USA Waste; (iv) granting USA Waste 10% of Eagle's net profits; and, (v) granting USA Waste a right of first refusal to purchase Eagle's stock in the event an existing shareholder of Eagle declined to purchase the stock.

USA Waste allegedly engaged in a course of conduct intended to bankrupt debtors and appropriate Mr. Ferro's plan for transporting waste, thereby monopolizing the waste barging industry in the Philadelphia market. USA Waste failed to provide Eagle with the minimum tonnage output or to tender the corresponding minimum payments as provided in the Transportation Agreement, thereby incurring a default of $1.8 million. USA Waste's default on its obligations placed Eagle in financial straits. In November 1997, USA Waste offered to loan Eagle an additional $750,000 conditioned upon Eagle's waiver of any claim to the $1.8 million deficiency under the Transportation Agreement as well as the cancellation of Section 4.1.B of that agreement which guaranteed minimum payments to Eagle. USA Waste also commenced negotiations on Eagle's behalf with its equipment suppliers to secure more favorable terms for Eagle.

Knowing of Eagle's dire financial situation, USA Waste encouraged debtors to file for bankruptcy. It represented that it would fund Eagle's operations for sixty days and subsequently acquire Eagle. Based upon these representations, debtors filed for Chapter 11 bankruptcy in the Eastern District of Pennsylvania on January 30, 1998. On February 24, 1998, USA

Waste informed debtors that it was no longer interested in acquiring Eagle and would no longer fund its operations.

Debtors' case originally proceeded under Chapter 11 of the Bankruptcy Code but was thereafter converted to a Chapter 7 proceeding. Appellee Mitchell Miller was appointed trustee in bankruptcy. As trustee, appellee commenced an adversary proceeding on debtors' behalf against USA Waste and Blank Rome. Appellee asserted a claim for breach of the Transportation Agreement against USA Waste and various claims against USA Waste and Blank Rome with respect to the events surrounding the debtors' attempts to purchase the State Road property. Appellee alleged that USA Waste endeavored to acquire the State Road property for itself as part of its plan to monopolize the waste disposal market in the Philadelphia area and that USA Waste accomplished this goal by recruiting debtors' attorneys, Blank Rome, to assist USA Waste and undermine debtors' efforts to acquire the property. The complaint sets forth claims against USA Waste for tortious interference with debtors' relationship with Blank Rome and for fraudulent inducement in persuading debtors to file for bankruptcy based upon representations that USA Waste would acquire Eagle; claims against Blank Rome for breach of their fiduciary duty to debtors by representing both debtors and USA Waste with respect to the acquisition of the State Road property; and, claims against USA Waste and Blank Rome for tortious interference with debtors' prospective business relationship with the owner and mortgage holders of the State Road property.

On October 25, 1999, appellants petitioned the Bankruptcy Court for relief from the automatic stay to pursue claims against USA Waste in a New York state court. In their proposed complaint, they sought to impose vicarious liability upon

USA Waste for Eagle's breach of the equipment leases under alter ego, joint venture and agency theories. They also sought to hold USA Waste directly liable for tortious interference with the equipment leases. In their petition, appellants requested that the Bankruptcy Court declare that their proposed claims were not subject to the automatic stay. Appellants asserted that these claims were never property of the estate or, alternatively, that the trustee had abandoned the claims. In the event that their claims were subject to the stay, appellants argued that cause existed to modify the stay to allow them to pursue them.

The Bankruptcy Court denied appellants' petition. It found that appellants' proposed claims in fact belong to the estate and were subject to the automatic stay. It also concluded that the two pleadings contained essentially the same allegations of wrongdoing on the part of USA Waste and differed only in their legal theories, and that granting appellants relief from the stay would result in "essentially duplicative litigation" and could result in "inconsistent rulings on identical questions."

### IV. *Discussion*

■■■ As a preliminary matter, the court must determine whether the Bankruptcy Court's denial of relief is appealable as a "final" decision pursuant to 28 U.S.C. § 158(a)(1). In this Circuit, denials of relief from an automatic stay are not considered final appealable decisions *per se. See United States v. Nicolet*, 857 F.2d 202, 203 (3d Cir.1988) (order lifting automatic stay is appealable and denial of relief from stay "may" be appealable); *In re West Elecs.*, 852 F.2d 79, 82 (3d Cir.1988). *See also United States v. Pelullo*, 178 F.3d 196, 200–01 (3d Cir.1999). Courts employ a "functional" or "pragmatic" approach in bankruptcy cases to determine whether a

denial of relief from the stay is effectively a final decision. *See John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154, 157 (3d Cir.1993); *Nicolet*, 857 F.2d at 205. A decision that the moving party was not entitled to relief on the merits is considered a final, appealable decision. *See Resolution Trust Corp. v. Swedeland Devel. Group Inc.*, 16 F.3d 552, 559 n. 4 (3d Cir.1994); *In re West Elecs.*, 852 F.2d at 82 (distinguishing cases where bankruptcy judge denied relief on merits from those denying relief on other grounds). As the Bankruptcy Court determined that appellants were not entitled to relief on the merits of their petition, this court may exercise jurisdiction.

■■■ The bankruptcy code operates to stay any action "to obtain possession of . . . or to exercise control over property of the estate." *See* 11 U.S.C. § 362(a)(3). Section 541 of the code defines property of the bankruptcy estate which is construed expansively to include most claims that a debtor may have against others. *See Barletta v. Tedeschi*, 121 B.R. 669, 671 (N.D.N.Y.1990); *Krank v. Utica Mutual Ins. Co.*, 109 B.R. 668, 669 (E.D.Pa.1990). Whether a particular claim constitutes property of the estate subject to the stay depends upon the nature of the claim. If the claim is a general one that could be brought by any creditor, it is property of the estate. *See Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993); *St. Paul Fire & Marine Ins. Co. v. PepsiCo Inc.*, 884 F.2d 688, 700–01 (2d Cir.1989).

■■■ The question of whether a claim is general to all creditors or specific to an individual creditor is one of state law. *See Kalb, Voorhis*, 8 F.3d at 132; *Steyr–Daimler–Puch of Amer. Corp. v. Pappas*, 852 F.2d 132, 135 (4th Cir.1988). *See also Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (prop-

erty interests, in bankruptcy or otherwise, are generally determined by state law). There is scant precedent concerning what state law applies although some courts have concluded that, at least with respect to alter ego claims, the law of the state of the debtor's incorporation should govern whether or not such claims are property of the estate. *See Kalb, Voorhis*, 8 F.3d at 132; *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995); Jeremy V. Richards, *Alter Ego Claims of the Debtor Vest Exclusively in the Estate*, 23 Cal.Bankr.J. 15, 32 (1996) (noting dearth of discussion on the issue but also that "most of the decisions appear to apply either the law of the state of incorporation or the law of the principal place of business of the corporate debtor").

 New York is the state of debtors' incorporation and principal place of business. New York also has other ties to the proceedings. USA Waste conducts substantial business in New York. Appellant Trac maintains its principal place of business in New York. The Transportation Agreement calls for Eagle to pick up and transport waste from New York. Appellants propose to proceed against USA Waste in New York. Particularly in the absence of significant ties to any other single jurisdiction, the court looks to New York law to determine whether appellants' proposed claims are property of the estate.[2]

 "[U]nder New York law, the trustee has standing to assert claims based upon piercing the [debtor's] corporate veil or alter ego liability, and creditors are precluded from pursuing those claims until they have been abandoned." *In re Keene Corp.*, 164 B.R. 844, 852 (Bankr.S.D.N.Y.

1994). *Accord Pappas v. Freund*, 172 Misc.2d 466, 660 N.Y.S.2d 302, 305 (N.Y.Sup.Ct.1997). The automatic stay bars a claim by a creditor against a third party asserting a general injury to the claimant as a creditor, the successful prosecution of which would increase the assets available to all creditors. *In re Keene*, 164 B.R. at 854.

 Appellants' alter ego theory is predicated on USA Waste's alleged domination of debtors and disregard of their separate corporate existence. Any creditor could seek to impose liability on USA Waste for debtors' debts on these allegations. A successful prosecution of such a claim against USA Waste would increase the assets available to satisfy all creditors. The Bankruptcy Court properly considered appellants' alter ego claim to be property of the estate subject to the automatic stay.

Appellants' theories of joint venture and agency liability are simply alternate theories predicated on the same factual allegations. Appellants offer nothing to show that the facts underlying these theories apply uniquely to their claims rather than commonly to the potential claims of all creditors. Indeed, the overwhelming majority of events on which they rely to support their joint venture and agency theories occurred after execution of the Transportation Agreement. The conduct allegedly amounting to corporate domination of debtors by USA Waste occurred thereafter. Prior to entering the equipment leases with appellants, the entirety of debtors' relationship with USA Waste consisted of the Confidentiality Agreement and the Waste Disposal Agreement with a USA Waste subsidiary. If a joint venture or principal-agent relationship existed be-

---

**2.** Debtors' operations had ties to Pennsylvania, however, most of those relate to the use and thwarted acquisition of the State Road property which is not implicated by appellants' proposed complaint.

tween USA Waste and debtors, appellants have not demonstrated that any such relationship existed at the time they entered the equipment leases with debtors. The events subsequent to the consummation of the equipment leases could be asserted by any creditor to obtain relief.

Appellants offer no case law holding that a creditor may pursue claims outside the automatic stay to impose liability upon a non-debtor for the debtors' obligations under joint venture or agency principals.[3] On the record presented, the Bankruptcy Court properly concluded that appellants' alternate joint venture and agency theories are subject to the automatic stay.

■ Contrary to appellants' suggestion, appellee has not abandoned these claims. Initially, it is doubtful that appellants preserved this issue for appeal. The code provides the appropriate mechanism for a creditor to obtain a judicial declaration of abandonment of estate property on the part of the trustee. *See* 11 U.S.C. § 554; *Board of Dirs. of the Chestnut Grove Condominium Unit Owners' Ass'n v. Resolution Trust Corp.*, 173 B.R. 1, 2 n. 3 (D.D.C.1994) (citing cases) *rev'd on other grounds by* 72 F.3d 919 (D.D.C.1995). *See also* Fed.R.Bankr.P. 6007(b). There is no indication of record that appellants followed the prescribed procedure for obtaining a determination of abandonment. Rather than moving pursuant to § 554(b), appellants argued abandonment as part of their effort to obtain a modification of the automatic stay for cause under § 362(b). In any event, the court is satisfied that the trustee did not abandon any prospective claims belonging to the estate.

■ The bankruptcy code sets out three specific methods for effectuating the abandonment of estate property. First, the trustee may on his own initiative abandon property "that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Second, a court may order abandonment of estate property upon the request of a party in interest who claims that the property is burdensome or of inconsequential benefit to the estate. *See* 11 U.S.C. § 554(b). Lastly, property that has been properly scheduled by the debtor will be deemed abandoned if it has not been properly administered by the trustee before the close of the case. *See* 11 U.S.C. § 554(c).

■ Appellants argue that by not including their proposed causes of action in the adversary proceeding, appellee exercised a "de facto abandonment" of those claims. A failure to pursue a particular claim by a trustee or debtor-in-possession, however, does not amount to abandonment of the claim. *See In re Gen. Dev. Corp.*, 179 B.R. 335, 340 (S.D.Fla.1995) (debtor-in-possession, who stands in same position as trustee, "cannot abandon a legal claim merely by failing to prosecute it, whatever its reason may be for not doing so"); *In re Prospero*, 107 B.R. 732, 735 (Bankr. C.D.Cal.1989) ("[m]ere inaction by the Trustee does not accomplish abandonment"). *See also In re Betty Owens Sch., Inc.*, 1997 WL 188127, *3 (S.D.N.Y. Apr.17, 1997). Appellants have not demonstrated that these claims are otherwise burdensome or of no value to the estate.

---

**3.** Appellee correctly notes that the cases appellants do cite for support stand simply for the uncontroversial proposition that a non-debtor may enjoy the protection of a debtor's automatic stay only in the rarest of circumstances. That is much different than the issue here of whether particular claims against a non-debtor are property of the estate. In the cases cited, which uniformly hold that individual partners are generally not protected by the debtor partnership's stay, the estate had no interest whatsoever in the claims against the individual partners.

The Bankruptcy Court also rejected appellants' request for a modification of the automatic stay "for cause." It did not abuse its discretion in doing so.

■■■■ A party in interest, upon notice and a hearing, may obtain relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). A request for relief for cause under § 362(d) is considered in view of the totality of circumstances unique to each case. *See In re Wilson,* 116 F.3d at 90. A court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties. *See In re Clinton Centrifuge, Inc.,* 81 B.R. 844, 850 (Bankr.E.D.Pa.1988). Generally, unsecured creditors are entitled to relief from an automatic stay only in extraordinary circumstances. *See In re Tristar Auto. Group, Inc.,* 141 B.R. 41, 44 (Bankr. S.D.N.Y.1992); *In re Metro Transp. Co.,* 82 B.R. 351, 354 (Bankr.E.D.Pa.1988).

■■■■ The Bankruptcy Court reasonably relied on concerns about judicial economy and the avoidance of duplicitous litigation. It reasonably concluded that "[t]he basic allegations of wrongdoing against USA Waste are largely the same in both proceedings" and that granting appellants relief from the stay would invite "essentially duplicitous litigation" with the accompanying risk of inconsistent rulings.

Appellants have not shown how they are burdened by the stay to any greater degree than any other unsecured creditor. As appellants' proposed complaint was never filed, the stay did not halt the progress of other proceedings. *See In re Borbidge,* 81 B.R. 332, 335–36 (Bankr.E.D.Pa. 1988) (fact that initiation of stay did not disrupt ongoing state proceeding relevant to § 362(d) analysis). Appellants have not demonstrated why they should be permit-

ted to circumvent the normal preference for payment of creditors provided by the bankruptcy code.

On the record presented, the Bankruptcy Court properly concluded that appellants' alternate joint venture and agency theories are subject to the automatic stay.

■■■■ Appellants' contention that their tortious interference with contract claim should not be considered estate property is more compelling. With this claim, appellants seek to impose direct liability on USA Waste on a basis unique to them rather than seeking to hold USA waste vicariously liable for debtors' debts generally. Appellants' reliance on the Eighth Circuit opinion in *Stone's Pharmacy v. Pharmacy Accounting Mgmt., Inc.,* 875 F.2d 665 (8th Cir.1989) is reasonably placed. In *Stone's Pharmacy,* the Court held that the automatic stay did not apply to a creditor's tortious interference claim against a debtor who had purchased most of the debtor's assets and then allegedly caused the debtor to breach its contract with the creditor. *Id.* at 668.

The elements of a tortious interference with contract claim under New York law are the existence of a valid contract; defendant's knowledge of the contract and intentional interference with it; and, a resulting breach and damages. *See Hoag v. Chancellor, Inc.,* 246 A.D.2d 224, 228, 677 N.Y.S.2d 531 (N.Y.App.Div.1998). By its nature, such a claim involves conduct and injuries specific to a particular plaintiff. Other creditors, who were not parties to the subject contract, would lack standing to assert the claim. A successful prosecution of this claim would not diminish the potential assets available to satisfy other creditors.

The court concludes that this claim is not subject to the automatic stay. It is not altogether clear, however, that the Bank-

ruptcy Court held to the contrary. The Bankruptcy Court discussed appellants' other putative claims but made no explicit finding with regard to the tortious interference claim. It did conclude that all of the putative claims were "predicated on the same nucleus or set of operative facts" as those in the adversary proceeding. This is correct.

The tortious interference claim is predicated on the same alleged acts of corporate domination and abuse which form the basis of the tortious interference and fraudulent inducement claims in the adversary proceeding. A decision in a state court resolving these common issues could interfere with an orderly resolution of the bankruptcy proceedings.[4] In such circumstances, a bankruptcy judge has broad equitable powers which exceed the limits of the automatic stay and permit him to enjoin the commencement or prosecution of collateral proceedings. *See* 11 U.S.C. § 105(a); *In re Baldwin–United Corp. Litig.,* 765 F.2d 343, 348 (2d Cir. 1985); *In re Keene,* 164 B.R. at 849.

The court cannot conscientiously determine from the record presented whether the Bankruptcy Court meant specifically to subject the tortious interference claim to the automatic stay, meant to exercise its § 105(a) powers or for some reason did squarely focus on this discrete claim. The most appropriate course under the circumstances is a remand to allow the Bankruptcy Court to clarify or amplify its action in regard to this claim.

### V. *Conclusion*

The Bankruptcy Court correctly concluded that appellants' proposed alter ego, joint venturer and agency claims against USA Waste are subject to the automatic stay and have not been abandoned by the trustee. The Bankruptcy Court did not abuse its discretion in denying appellants relief from the automatic stay for cause.

Appellants' proposed tortious interference claim against USA Waste is not subject to the stay. It may nevertheless be subject to an appropriate exercise of powers granted to the Bankruptcy Court pursuant to § 105(a).

Accordingly, this matter will be remanded to the Bankruptcy Court for a clarification or determination regarding the putative tortious interference claim. The judgment of the Bankruptcy Court will in all other respects be affirmed.

---

4. Principles of issue preclusion apply in bankruptcy matters. *See Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Wilson,* 116 F.3d at 90; *First Jersey Nat'l Bank v. Brown,* 951 F.2d 564, 568 (3d Cir.1991).