[744 NYS2d 384]

JOAN HANSEN & COMPANY, INC., Appellant, v EVERLAST WORLD'S BOXING HEADQUARTERS CORP. et al., Respondents, et al., Defendants.

First Department, June 27, 2002

**APPEARANCES OF COUNSEL**

*George Berger* of counsel, New York City (*Bruce J. Turkle,* and *Jonathan R. Tillem* on the brief; *Phillips Nizer Benjamin Krim & Ballon LLP,* attorneys), for appellant.

*Edward R. Epstein,* New York City, for Everlast World's Boxing Headquarters Corp. and another, respondents.

*S. David Harrison* of counsel, New York City (*Lesser & Harrison,* attorneys), for Benjamin Nadorf, respondent.

**OPINION OF THE COURT**

RUBIN, J.

This action arises out of the acquisition by a licensee of the corporation that owns the trademarks used by the licensee in marketing its products. Plaintiff received a commission based on the royalty payments made by the former licensee* to defendant. Plaintiff maintains that even though the former licensee is no longer required to make royalty payments to defendant, defendant remains obligated to continue paying commissions to plaintiff in an amount equivalent to the payments which the former licensee would have made had the licensor not been merged into defendant's wholly-owned subsidiary. The complaint asserts separate causes of action against the principals of the merged corporations, individually, for their asserted intentional interference with plaintiff's existing and prospective business relations, for inducing defendant's breach of its contract with plaintiff and, as against the principal of the licensor, for unjust enrichment upon the sale of his interest in the corporation.

Under a representation agreement with defendant Everlast World's Boxing Headquarters Corp. (Boxing), plaintiff Joan Hansen & Company (Hansen) functions as defendant's "non-exclusive" and "independent licensing consultant." For license agreements entered into as a result of Hansen's services to defendant, as consultant, plaintiff is paid commissions calculated as a percentage of the royalties received by Boxing for the use of its Everlast trademark, trade names and logos by its various licensees. The agreement, which has governed Hansen's activities on Boxing's behalf since 1994, provides plaintiff with compensation in respect of some 29 individual licenses. At issue are commissions on royalties under five such licenses that were granted by Boxing to defendant Active Apparel Group (Active). Specifically, plaintiff Hansen contends that, as the result of the acquisition of Boxing by a wholly-owned subsidiary of Active, plaintiff is entitled to damages equal to the present value of the amount Hansen would have received over the life of the licenses had Boxing not been acquired by Active's subsidiary.

This is, therefore, an action for breach of contract predicated on the theory that the acquisition of Boxing by its licensee, Ac-

---

* "Former" in the sense that although defendant still uses the license, it no longer pays for the privilege by virtue of its ownership of the corporation that holds the license.

tive (renamed Everlast Worldwide, Inc.), amounts to a breach of the representation agreement by Boxing. The second, third and fourth causes of action assert, inter alia, that defendants George Q. Horowitz, the president and CEO of Active, and Benjamin Nadorf, the president and CEO of Boxing, induced the breach of Boxing's contract with plaintiff and interfered with Hansen's business relationships with existing and potential licensees. A fifth cause of action, asserted solely against defendant Nadorf, contends that he was unjustly enriched, having received excess compensation for his shares in Boxing as the result of the termination of Boxing's payment of commissions to plaintiff under the representation agreement.

The individual defendants moved for summary judgment dismissing the causes of action asserted against them pursuant to CPLR 3211 (a) (7). Plaintiff cross-moved for partial summary judgment as to liability on its first cause of action for breach of contract (CPLR 3212 [a], [e]). Supreme Court found that the acquisition of the Everlast trademarks by its licensee cannot be considered wrongful or actionable. As the merger did not amount to a breach of the representation agreement, the individual defendants cannot be held liable for inducing its breach. With respect to the claim that the individual defendants interfered with Hansen's business relationships with existing and potential licensees, Supreme Court noted that the representation agreement explicitly states that it is nonexclusive. Therefore, the court held that the failure of the complaint to allege the use of "wrongful means" by the individual defendants is fatal to the cause of action (citing *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 191). Finally, the court held that defendant Nadorf had not been unjustly enriched because Hansen's services conferred a benefit upon Boxing, a corporate defendant, and not upon Nadorf, individually. Therefore, the court denied plaintiff's motion for summary judgment as to liability on its breach of contract claim and granted the respective motions of the individual defendants to dismiss the tort claims against them.

■ While this Court agrees with the disposition of the motions, our analysis proceeds on somewhat different grounds. Of the various causes of action asserted in the complaint, each depends on the existence of a contractual relationship that was breached or that was interfered with so as to either induce the breach of an existing contract or preclude the formation of a prospective contract. With respect to defendant Boxing, the complaint fails to identify an existing contractual obligation

that Boxing has failed to perform. Likewise, with respect to the individual defendants, the complaint fails to identify any contractual relationship or potential contractual relationship with which the individual defendants could interfere or which might otherwise provide a basis for a claim of unjust enrichment.

That the reorganization of corporate relationships and the contemporaneous acquisition of Boxing resulted in the termination of royalty payments (and, consequently, Hansen's commissions on the licenses granted to Active) does not constitute a breach of the terms of the representation agreement. As this Court has noted, "The election by an enterprise to terminate its business operations is not, without more, a basis for an action by contracting parties adversely affected by its decision" (*Megaris Furs v Gimbel Bros.*, 172 AD2d 209, 214). In the absence of any indication that Active lacked a similarly sound business purpose in acquiring Boxing, thereby terminating Active's royalty payments, Supreme Court correctly decided that the coincident termination of plaintiff's commissions is not actionable. Certainly, nothing in the representation agreement requires Boxing to avoid being the subject of an appropriation, by a licensee or otherwise. Finally, as to the claims predicated on intentional interference with the representation agreement, even if plaintiff could make out a breach of contract by Boxing, the complaint fails to allege why the termination of Boxing's contractual obligation to plaintiff is without economic justification (*E.F. Hutton Intl. Assoc. v Shearson Lehman Bros. Holdings*, 281 AD2d 362, *lv denied* 97 NY2d 603).

As a further basis for affirmance, we conclude that the damages sought by plaintiff for its lost commissions are not recoverable as a matter of law. The terms of the representation agreement do not expressly provide relief to Hansen upon purchase of Boxing by a licensee. Nor does the agreement contain any provision that could be remotely construed as a guarantee that the level of Hansen's commissions will not decrease—whether because of a decline in, or failure of, the business of a licensee, or for any other reason. The magnitude of the damages sought in the action for breach—total anticipated commissions over the duration of the license, according to the affidavit in support of plaintiff's cross motion—is out of proportion to any liability contemplated by the contract. The only applicable provision, governing Boxing's outright termination of the representation agreement with Hansen, provides for a maximum payment equivalent to approximately 18 months' commissions.

The contract refutes the suggestion that the extensive liability sought to be imposed upon defendant Boxing was " 'liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made' " (*Kenford Co. v County of Erie*, 73 NY2d 312, 319, quoting *Globe Ref. Co. v Landa Cotton Oil Co.*, 190 US 540, 544 [Holmes, J.]). In the absence of any indication that recovery of the "unusual or extraordinary" damages sought by plaintiff was "brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting" (*Chapman v Fargo*, 223 NY 32, 36), recovery is barred under the time-honored rule of *Hadley v Baxendale* (9 Exch 341, 156 Eng Rep 145 [1854]).

The fifth cause of action for unjust enrichment asserted against defendant Nadorf is likewise deficient. While he was enriched by the sale of his interest in Boxing, the facts pleaded in the complaint do not assert any basis from which to conclude that such enrichment was unjust. The criteria for recovery under a theory of unjust enrichment are: "(1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services" (*Moors v Hall*, 143 AD2d 336, 337-338). Plaintiff acted under contract with defendant Boxing and could only look to that corporation for compensation. As this Court emphasized in *Kagan v K-Tel Entertainment* (172 AD2d 375, 376), to recover from a particular defendant,

> "a plaintiff must demonstrate that services were performed *for the defendant* resulting in its unjust enrichment (*Kapral's Tire Serv. v Aztek Tread Corp.*, 124 AD2d 1011, 1013). It is not enough that the defendant received a benefit from the activities of the plaintiff (*Armstrong v I.T.T.S. Corp.*, 10 AD2d 711); if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery (*Citrin v Columbia Broadcasting Sys.*, 29 AD2d 740)" (emphasis in original).

Plaintiff points to no service that was rendered to defendant Nadorf for which plaintiff can reasonably expect compensation.

As to the causes of action asserted against both of the individual defendants, it should be emphasized that the existence of a plausible claim for breach of contract does not,

without more, provide a basis for the assertion of a cause of action for interference with contractual relations against those corporate officers and directors whose actions brought about the asserted breach. The legal distinction drawn between a corporation and those who administer its affairs is a matter of sound public policy. "The law permits the incorporation of a business for the very purpose of escaping personal liability" (*Bartle v Home Owners Coop.*, 309 NY 103, 106). It is settled that "a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 140).

As a matter of public policy,

> "an officer or director of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken * * * To hold otherwise would be dangerous doctrine, and would subject corporate officers and directors continually to liability on corporate contracts and go far toward undermining the limitation of liability which is one of the principal objects of corporations" (*Matter of Brookside Mills [Raybrook Textile Corp.]*, 276 App Div 357, 367; *see also, Potter v Minskoff*, 2 AD2d 513, 514, 516, *affd* 4 NY2d 695).

Plaintiff, however, contends that for purposes of a motion to dismiss directed at the sufficiency of the pleadings, this Court is required to accept its allegations that the individual defendants committed independent tortious acts. Plaintiff invokes the general rule that the facts are construed in a light most favorable to the party opposing dismissal and that the opponent is entitled to all reasonable inferences that can be derived therefrom (*Arrington v New York Times Co.*, 55 NY2d 433, 442, *cert denied* 459 US 1146; *Dulberg v Mock*, 1 NY2d 54, 56).

A cause of action seeking to hold corporate officials personally responsible for the corporation's breach of contract is governed by an enhanced pleading standard. As stated by this Court, "Failure to plead in nonconclusory language facts

establishing all the elements of a wrongful and intentional interference in the contractual relationship requires dismissal of the action" (*Bonanni v Straight Arrow Publs.*, 133 AD2d 585, 587, citing *Jennings v Burlington Indus.*, 19 AD2d 877, 878). It has been observed that, "where the pleading has been sustained * * * the complaint has contained allegations that the acts of the corporate officers were done with the motive for personal gain as distinguished from gain to their corporations" (*Potter v Minskoff, supra*, 2 AD2d at 514-515). The general rule, as we have stated, is that an "officer or director is liable when he acts for his personal, rather than the corporate interests" (*Hoag v Chancellor, Inc.*, 246 AD2d 224, 230 [incentive fees due employees alleged to have been diverted to officers' personal benefit]; *see also, Courageous Syndicate v People-To-People Sports Comm.*, 141 AD2d 599, 600 [purported fraud not extraneous to, or distinct from, contract]). Thus, a pleading must allege that the acts complained of, whether or not beyond the scope of the defendant's corporate authority, were performed with malice and were calculated to impair the plaintiff's business for the personal profit of the defendant (*A.S. Rampell, Inc. v Hyster Co.*, 3 NY2d 369, 379; *see also, Robbins v Panitz*, 61 NY2d 967, 969).

Plaintiff does not assert that the individual defendants acted in other than a corporate capacity. Plaintiff also does not explain why directing licensees "not to have any further dealings with Hansen" and applying pressure to licensees "by unjustified complaints and unreasonable audit demands" under the various license agreements should operate to subject these defendants to personal liability. It is uncontroverted that the respective corporations had an economic interest in the licensing arrangements said to have been interfered with. Significantly, there is no allegation that either of these defendants sought to obtain a personal benefit, as opposed to a benefit to the corporation he represented (*Bank of N.Y. v Berisford Intl.*, 190 AD2d 622; *Ehrlich v Alper*, 1 AD2d 875). Indeed, the second, third and fourth causes of action advance identical claims against both the individual and corporate defendants. Personal liability for inducing the breach of a contract, even where the elements of that tort are proved, must be attributed to "independent torts or predatory acts directed at another" (*Buckley v 112 Cent. Park S.*, 285 App Div 331, 334; *see also, Foster v Churchill*, 87 NY2d 744, 750; *Murtha v Child Care Assn.*, 45 NY2d 913, 915), wrongs that are not alleged in this case.

Finally, plaintiff's claim that the individual defendants interfered with its business relationships with existing and potential licensees is without merit. Plaintiff does not identify any "business relationship" with existing or prospective licensees that is bestowed on it by the representation agreement. Under the contract, plaintiff's contractual relationship is strictly with Boxing. Plaintiff is an "independent licensing consultant" not "a joint venturer, partner or employee" and lacks "authority to enter into any licensing agreements on behalf of EVERLAST [Boxing] or to bind or obligate EVERLAST [Boxing] in any manner whatsoever." While Hansen is obligated to use its best efforts to find potential licensees for the Everlast trademark, Boxing retains full power to accept or reject the proffered candidate. When, and if, Boxing enters into a licensing agreement with any such party, the contract provides Hansen only with the limited right to receive a consulting commission based upon the resulting "net royalty income," defined as "revenue received by [Boxing] from Licensees" less certain expenses. The only reasonable construction of the contract is that if no revenue is received, no commission is payable.

The tort of intentional interference with contractual relations is comprised of four elements: (1) the existence of a contract, enforceable by the plaintiff, (2) the defendant's knowledge of the existence of that contract, (3) the intentional procurement by the defendant of the breach of the contract, and (4) resultant damages to the plaintiff (*Israel v Wood Dolson Co.*, 1 NY2d 116, 120). In the absence of a contract between plaintiff and a licensee, with which the individual defendants could interfere, this cause of action is unavailing. The representation agreement clearly contemplates that the business relationship—that is, the contractual relationship—to be established as the result of plaintiff's successful efforts on behalf of defendant is a licensing agreement between Boxing and its licensee. Plaintiff is not in privity with any licensee and has no interest in the subject license; therefore, there is no existing contract with any licensee subject to interference.

Similarly, with respect to prospective licensees, it is not possible to meet the requisite standard for recovery. Intentional interference with business relations requires a demonstration that the individual defendant "intentionally and through wrongful acts prevented a third party from extending a contractual relationship to the plaintiff" (*Freedman v Pearlman*, 271 AD2d 301, 305). As no such contractual relationship

is contemplated by the representation agreement, there is no prospective contract that is subject to interference.

Accordingly, the order of Supreme Court, New York County (Charles Ramos, J.), entered November 30, 2001, which, inter alia, (1) granted defendant Nadorf's motion to dismiss the second, third, fourth and fifth causes of action of the complaint, as asserted against him, for failure to state a cause of action; (2) granted defendant Horowitz's motion to dismiss the second, third and fourth causes of action of the complaint, as asserted against him, for failure to state a cause of action; and (3) denied plaintiff's cross motion for partial summary judgment as to liability on the first cause of action of the complaint, as asserted against defendant Everlast World's Boxing Headquarters Corp., should be affirmed, without costs.

ANDRIAS, J.P., ROSENBERGER, WALLACH and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered November 30, 2001, affirmed, without costs.