■ DEAN PETKANAS, Respondent, v MICHAEL KOOYMAN et al., Appellants. [759 NYS2d 1] —Order, Supreme Court, New York County (Barbara Kapnick, J.) entered on or about July 23, 2002, which insofar as appealed from, denied defendants-appellants' motion to dismiss the complaint pursuant to CPLR

3211 (a) (7), unanimously reversed, on the law, without costs, the defendants' motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

This is an action sounding in, inter alia, tortious interference with plaintiff's employment contract. Plaintiff and defendants were shareholders and board members of Wintrade Holding Corp., a Delaware corporation. Wintrade Holding was the sole shareholder of WinTrade, Inc., a New York corporation. Plaintiff is also the sole shareholder of another corporate entity, Briarwood Investment Counsel, Inc., which had business dealings with WinTrade, Inc. An extant contract between Briarwood and WinTrade, Inc. seems to have been at the core of the subsequent financial fallout among these parties. Additionally, plaintiff was the chief operating officer of WinTrade, Inc. Defendants, as 70% shareholders, and hence majority shareholders of Wintrade Holding, allegedly called and held a shareholders' meeting of Wintrade Holding, for which plaintiff, also a shareholder, did not receive notice. Without our ruling on an issue of Delaware law, we would note that prior notice of a meeting of shareholders does not seem to be a statutory prerequisite to the action of a majority of shareholders (Del Code Ann, tit 8, § 228). At that meeting, they dissolved the board and replaced it with a new board that included them but excluded plaintiff. Shortly after, acting as sole shareholder of WinTrade, Inc., Wintrade Holding, by its new board, also replaced the former board of WinTrade, Inc. with a new board consisting of defendants. Then, acting as an employer, WinTrade, Inc. terminated its employment agreement with plaintiff, effectively firing him as chief operating officer. At this juncture, the issue before us is whether the individual defendants herein are protected by the cloak of privilege. Resolution of that question turns on whether the pleadings sufficiently set forth that they acted in an individual capacity rather than as corporate officers.

Although plaintiff originally commenced an arbitration proceeding against WinTrade, Inc., it subsequently entered bankruptcy, and plaintiff then commenced the present action against the individual defendants. The IAS court dismissed several of the legal claims advanced in the second amended verified complaint, but sustained the claim for tortious interference with contract. The court noted that though a qualified privilege extended to corporate directors whose acts result in a breach of contract by their corporate entity, the privilege is unavailable to protect conduct by individuals whose inducement

of the breach constitutes independent, rather than corporate, torts. The IAS court found unresolved factual issues in this regard. However, under the circumstances of this case, the privilege, and not its exception, applies and defendants were entitled to dismissal of this claim.

We have recently remarked on our consistently applied doctrine (*Joan Hansen & Co. v Everlast World's Boxing Headquarters Corp.*, 296 AD2d 103, 109 [2002]; *Buckley v 112 Cent. Park S.*, 285 App Div 331 [1954]) that recognizes the essential distinction between a corporation and those individuals who administer its affairs, and that sound public policy restricts the imposition of liability on corporate officers and directors for the acts of the corporation. As a result, "[a] cause of action seeking to hold corporate officials personally responsible for the corporation's breach of contract is governed by an enhanced pleading standard" (*Joan Hansen & Co., supra* at 109). Generally, we have construed such a standard to require a particularized pleading of allegations that the acts of the defendant corporate officers which resulted in the tortious interference with contract either were beyond the scope of their employment or, if not, were motivated by their personal gain, as distinguished from gain for the corporation. We have construed personal gain in terms that the challenged acts were undertaken "with malice and were calculated to impair the plaintiff's business for the personal profit of the [individual] defendant" (*Joan Hansen & Co., supra* at 110; accord *Hoag v Chancellor, Inc.*, 246 AD2d 224, 228 [1998] [claim reinstated]). The same rule applies when the thrust of the complaint is that the individual defendants sought to oust the plaintiff from employment and thereby deprive him of the financial benefits of that employment (*cf. Hoag, supra* at 229). That is, the pleadings must allege that the individual defendant corporate officer must have been acting for his or her own personal interests rather than for the corporate interest (*Hoag, supra* at 229-230).

Although the complaint in the present case is replete with allegations of harm to plaintiff, and conclusory allegations of malice by defendants, it fails to allege that defendants personally benefitted from these actions and that such was their motivating intent (*compare Hoag, supra*). Notably, plaintiff remains a shareholder of one corporate entity (Wintrade Holding) and there is no allegation that his financial interest as a shareholder in this entity has been harmed (*compare Zuckerwise v Sorceron, Inc.*, 289 AD2d 114 [2001]). Nor has plaintiff alleged in nonconclusory terms that defendants had not acted

in the corporate interest (*compare Kralic v Helmsley*, 294 AD2d 234 [2002]). Concur—Tom, J.P., Mazzarelli, Sullivan, Williams and Gonzalez, JJ.