■ E.F. Hutton International Associates Limited et al., Appellants, v Shearson Lehman Brothers Holdings, Inc., et al., Respondents. [723 NYS2d 161] —Order, Supreme Court, New York County (Barry Cozier, J.), entered April 27, 1999, which, in an action for tortious interference with contract, granted defendants' (Shearson) motion for summary judgment dismissing the complaint and denied plaintiffs' cross motion for partial summary judgment on the issue of liability, unanimously affirmed, without costs.

The IAS court correctly held that Shearson's interference with plaintiffs' service agreements with E.F. Hutton & Co. was justified by the economic interest that Shearson acquired in Hutton as a result of their merger agreement. Contrary to plaintiffs' claim, a strict ownership interest was not required (see, e.g., Ultramar Energy v Chase Manhattan Bank, 179 AD2d 592), and there was considerably more here than a mere offer to purchase. The merger agreement reflects that when it was executed, the boards of both Hutton and Shearson had already approved the deal and agreed to recommend that their shareholders accept it. While consummation of the agreement was contingent upon shareholder approval and other legal prerequisites, the agreement set in motion the approval process and bound Shearson to contractually purchase a controlling interest in Hutton.

To overcome the defense of economic justification available to Shearson, plaintiffs must establish "either malice on the one hand, or fraudulent or illegal means on the other" (Foster v

*Churchill*, 87 NY2d 744, 750). No evidence thereof having been adduced, summary judgment was properly granted in favor of Shearson. The record shows that once the merger agreement was executed, Hutton's board considered and approved Shearson's requests, and otherwise assumed a generally acquiescent posture in the belief that such would best preserve Hutton's value during the transition. Shearson determined to reject plaintiffs' service agreements with Hutton and announced this decision openly in its initial meeting with plaintiffs' representatives. Services to plaintiffs were then cut off as part of the consolidation effort, and the fact that Shearson may have known that this would negatively affect plaintiffs' ability to do business does not raise an issue of fact as to whether the breach was motivated by malice or accomplished by illegal means (*see*, *id.*, at 751).

Nor is an issue of illegal means raised by plaintiffs' claim that Shearson violated Delaware Code Annotated (General Corporation Law), title 8, § 251 (c), § 271 and § 141 (a) by effectively taking Hutton over before shareholder approval of the merger. Such laws were designed to protect minority shareholders in a company being acquired, not parties in a contractual relationship with such a company.

We have considered plaintiffs' other arguments, including that various alleged acts by Shearson committed after the announced termination of the subject contracts demonstrate malice, and find them unavailing. Concur—Rosenberger, J. P., Andrias, Wallach, Lerner and Buckley, JJ.