REPUBLIC TOBACCO, L.P., Plaintiff,

v.

NORTH ATLANTIC TRADING COMPANY, INC., et al., Defendants.

No. 98 C 4011.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 24, 2003.

Katherine Romano Schnack, Fed. Trade Com'n Assist. Regional Director, Chicago, IL, Lynn Hagman Murray, Charles S. Bergen, Marc s. Lauerman, Heather Labadot Smedstad, Grippo & Elden, Chicago, IL, Darrell J. Graham, Perkins Coie LLC, Chicago, IL, for Republic Tobacco, L.P.

Anne Giddings Kimball, Mark L. Durbin, Wildman, Harrold, Allen & Dixon, Chicago, IL, John K. Bush, Eric A. Braun, Janet P. Jakubowicz, Greenebaum, Doll & McDonald, Louisville, IL, William F. Cavanaugh, Jr., Willard C. Shih, Patterson, Belknap, Webb & Tyler, New York City, for North Atlantic Trading Co.

## *MEMORANDUM OPINION*

GRADY, District Judge.

Before the court is plaintiff's motion for summary judgment on Count IX of defendant's counterclaim. For the reasons stated below, the motion is granted.

## *BACKGROUND*

Plaintiff Republic Tobacco, L.P. ("Republic") imports and sells tobacco, roll-your-own ("RYO") cigarette papers, and other tobacco-related products. Defendant North Atlantic Trading Company, Inc. ("NATC") is Republic's direct competitor.[1] The following relevant facts and history of this case are taken from our memorandum opinion of April 9, 2002:

> Republic and North Atlantic sell their RYO cigarette paper to distributors and wholesalers, who resell the products to outlets such as convenience, drug, and variety stores and gas station/minimarts. As part of its marketing strategy, Republic offers certain incentive programs to these customers for stocking, selling (and promoting, in the case of distributors) Republic's products. Customers joining these programs can receive rebates, free products, and free travel in exchange for stocking or promoting specified amounts of Republic's RYO cigarette paper brands and meeting certain sales goals.[2] (Second

---

1. Defendants North Atlantic Operating Company, Inc. ("NAOC") and National Tobacco Company, L.P. ("National") are wholly-owned subsidiaries of NATC. NAOC imports RYO cigarette papers and other tobacco-related products sold under the "ZIG–ZAG" brand name. National distributes and sells ZIG–ZAG cigarette papers, Beech–Nut loose leaf chewing tobacco, and other tobacco-related products. We will refer to all defendants collectively as "North Atlantic" where appropriate.

2. The Republic Value–Added Rebate Incentive Program ("VRIP") provides incentives to distributors for stocking, promoting, and selling

Amended Complaint, Sample Incentive Program Agreements, Exs. A–D.)

.    .    .    .    .

North Atlantic alleges that Republic has engaged in anticompetitive practices regarding the sales of RYO cigarette papers to consumers in the southeastern United States (which North Atlantic defines as consisting of nine states—Alabama, Florida, Georgia, Kentucky, Mississippi, North Carolina, South Carolina, Tennessee, and Virginia). Republic has claimed that its market share in the region is as much as 95 to 98 percent. North Atlantic attributes this dominant market share to "cash payments to distributors and retailers who are Republic's customers" and "rebate and incentive programs that reward various merchandise and extravagant trips and cruise vacations" based on the quantity of products a distributor or retailer purchases from Republic. (Counterclaim, ¶ 3.) According to North Atlantic, distributors and wholesalers are the "gatekeepers" to specific regions because RYO cigarette paper importers rely on them to market their products, as a majority of retailers buy from distributors. North Atlantic contends that distributors and wholesalers make buying decisions at a regional level.

In recent years, Republic has revised its rebate and incentive programs to require exclusivity from distributors and retailers in the Southeast in order to qualify for certain program benefits. When a distributor or retailer decided to carry Republic's RYO cigarette papers exclusively, Republic bought the entire quantity of North Atlantic's products carried by that distributor or retailer

and resold them outside of the Southeast. North Atlantic claims that Republic has "selectively enforced" the exclusivity requirements by informing some incentive program participants that they would lose "points" in Republic's program if they carried North Atlantic's products, when other similarly situated customers had not incurred such a penalty. North Atlantic also claims that Republic representatives contacted the parties' mutual customers in an attempt to undermine their relationship with North Atlantic, offering the distributors and their employees and family members cash incentives, vacations, personal gifts, and other items.

North Atlantic asserts that Republic's conduct has harmed competition in the Southeast market by: (1) materially excluding North Atlantic and other competitors from the region; (2) effectively eliminating consumer choice in the region; and (3) raising the price of RYO cigarette papers above the competitive level in areas where Republic's exclusivity agreements have prevented its competitors from entering the market. North Atlantic contends that there is no legitimate business justification for Republic's exclusivity programs.

On June 30, 1998, Republic filed a four-count complaint in the instant case against NATC and NAOC. On July 15, 1998, NAOC and National filed an action against Republic and its affiliated companies in the United States District Court for the Western District of Kentucky, primarily alleging antitrust violations. The two pending actions have some overlapping facts; all discovery matters were heard in this court.

---

Republic's products to their retail accounts. (Second Amended Complaint, ¶ 12.) The Republic Convenience Store Distribution Incentive Program ("CDIP") provides incentives to convenience stores for stocking and selling

Republic's products. (*Id.* ¶ 13.) The Republic Travel Plus Program, open to both distributors and convenience stores, offers "points" to be used toward trips, such as cruises. (*Id.* ¶ 14 & Exs. C, D.)

In the instant case, after the defendants moved to dismiss several counts of the complaint, we gave Republic leave to amend. Republic filed an amended complaint on September 16, 1998, which added National as a defendant. North Atlantic moved to dismiss several counts of the amended complaint, and, in a memorandum opinion dated April 8, 1999, we dismissed Counts I (declaratory relief regarding patent infringement), VII (violation of the Illinois Consumer Fraud and Deceptive Business Practices Act), IX (unfair competition), and X (unlawful monopolization and attempted monopolization in violation of the Sherman Act). Republic then filed a second amended complaint, which added Counts XI and XII for monopolization and attempted monopolization in violation of federal and state laws. We dismissed those two counts in a memorandum opinion dated December 23, 1999.

*Republic Tobacco, L.P. v. North Atl. Trading Co.*, 254 F.Supp.2d 985, 989–91, 2002 WL 531349, at *1–3 (N.D.Ill.2002) (some footnotes omitted). The parties then filed cross-motions for summary judgment on certain counts of the complaint and counterclaim.

In our memorandum opinion of April 9, 2002, we granted North Atlantic's motion for summary judgment as to Counts IV and VI of Republic's complaint, denied the motion as to Count VIII, and granted the motion in part and denied it in part as to Count V. We granted Republic's motion for summary judgment on its own claims as to Counts II, III, and VIII of the Second Amended Complaint and denied it as to Count V. We granted Republic's motion for summary judgment on North Atlantic's counterclaim as to Counts I, II, III, IV, V, VI, VII, and X and denied it as

to Counts VIII and IX. We dismissed Count VIII of the counterclaim *sua sponte* and gave North Atlantic leave to replead it. North Atlantic did not replead Count VIII. We also gave Republic leave to file the instant motion for summary judgment regarding Count IX.

### DISCUSSION

Republic moves for summary judgment on Count IX of North Atlantic's counterclaim. North Atlantic alleges in Count IX that Republic tortiously interfered with its business relationships and economic advantage. North Atlantic claims that Republic's rebate and incentive programs caused various wholesalers, distributors, and retailers to stop doing or refrain from doing business with North Atlantic, leading to lost sales.[3]

The parties do not agree on what state's law governs this claim. Republic contends that Illinois law applies. North Atlantic, on the other hand, argues that the law of nine southeastern states applies—Alabama, Florida, Georgia, Kentucky, Mississippi, North Carolina, South Carolina, Tennessee, and Virginia. The parties do agree that we must consult the choice-of-law rules of Illinois to determine which state's substantive law should apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). The Seventh Circuit has stated:

The Illinois Supreme Court uses the "most significant relationship" test for choosing the appropriate law in tort cases. In practice, this means that "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the

---

**3.** North Atlantic does not contend that Republic induced any customers to breach any contracts with North Atlantic. In other words, this is a tortious interference with prospective economic advantage claim, not a tortious interference with contract claim.

parties." A court is to determine whether Illinois has the more significant relationship by examining the following factors: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered. The Illinois courts also consider "the interests and public policies of potentially concerned states ... as they relate to the transaction in issue."

*Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503–04 (7th Cir.1998) (citations omitted).

North Atlantic contends that we should apply the law of the nine states listed *supra* because Republic had exclusive dealing arrangements with retailers and distributors in those states, and consequently those states were the place of injury. North Atlantic then picks and chooses which of the nine states' case law it cites to support its arguments. North Atlantic's position is farfetched and contravenes the purpose and goal of choice-of-law analysis: applying *one state's* law. North Atlantic also focuses solely on the place of injury and largely ignores the other relevant factors.

A better approach is to view the place of alleged injury as the place where North Atlantic (or, more specifically, the three North Atlantic entities) is domiciled. *See Barry Gilberg, Ltd. v. Craftex Corp.*, 665 F.Supp. 585, 590 (N.D.Ill.1987). This analysis is complicated because North Atlantic has taken the same evasive approach to briefing this issue as it previously did in relation to the earlier summary judgment motions. The two corporate North Atlantic defendants/counter-plaintiffs, NATC and NAOC, are Delaware entities. North Atlantic also states that it is "domiciled" in New York and Kentucky, and that it has "operations" in Kentucky. Domicile

means citizenship, however, and for corporations, that in turn means the place of incorporation and the principal place of business. The issue, then, as to NATC (the parent company) and NAOC, is their principal places of business. North Atlantic has admitted in its answer that NATC's principal place of business is New York, but its pleadings do not reveal the principal place of business of NAOC. National, the third defendant/counter-plaintiff, is a limited partnership with "offices" in Kentucky and New York, and North Atlantic has not disclosed its citizenship (although National is a wholly-owned subsidiary of NATC). Because we do not have enough information to conclude where the injury was felt, we will assume that it was felt in both New York and Kentucky. Republic is an Illinois corporation with its principal place of business in Illinois. Arguably, its allegedly wrongful conduct occurred in Illinois. Thus, our analysis points to three states' law—Illinois, New York, and Kentucky.

■ Regardless of which state's law we apply, the result is the same. As the parties acknowledge, the basic elements of a tortious interference with prospective economic advantage claim are the same in each state, although they may be worded slightly differently: a reasonable expectation of a valid business relationship or economic advantage; the defendant's knowledge of the expectancy; purposeful interference by the defendant that defeats the expectancy; and damages resulting from the interference. *See Grund v. Donegan*, 298 Ill.App.3d 1034, 233 Ill.Dec. 56, 700 N.E.2d 157, 160 (1998); *Allcar Motor Parts Corp. v. Federal–Mogul Corp.*, No. 96 CIV. 4419, 1998 WL 671448, at *5 (S.D.N.Y. Sept.29, 1998) (applying New York law); *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1080 (W.D.Ky.1995) (applying Kentucky law).[4] In all three states,

---

4. North Atlantic contends, however, that

"precedent in each state on what conduct

the interference must have been *improper* in the sense that it was accomplished by wrongful means, or was motivated by malice and not simply economic self-interest. *See Strosberg v. Brauvin Realty Servs., Inc.,* 295 Ill.App.3d 17, 229 Ill.Dec. 361, 691 N.E.2d 834, 845 n. 2 (1998); *E.F. Hutton Int'l Assocs. Ltd. v. Shearson Lehman Bros. Holdings, Inc.,* 281 A.D.2d 362, 723 N.Y.S.2d 161, 162 (N.Y.App.Div.2001); *Cullen v. South E. Coal Co.,* 685 S.W.2d 187, 189–90 (Ky.Ct.App.1983).[5]

■ Republic argues that it is entitled to summary judgment on Count IV because North Atlantic has failed to prove (1) that it had a specific business relationship or expectancy that was defeated due to Republic's improper conduct; or (2) damages. We agree. North Atlantic's claim is based on Republic's rebate and incentive programs, which require customers to buy Republic's products exclusively. North Atlantic alleges that these programs have "locked out" North Atlantic from the southeast; according to North Atlantic, Republic has interfered with thousands of its customers. It appears that North Atlantic is simply dressing up its antitrust claims, on which we granted summary judgment for Republic, in tortious interference clothing.

North Atlantic fails to provide evidence of any *specific* customers who terminated or altered their relationship with North Atlantic as a result of any conduct by Republic. North Atlantic's assertions that "the universe of retailers with which Republic has interfered are those under exclusive contract with Republic" and that "North Atlantic sales people have identified customers that *could have* stocked ZIG–ZAG but for Republic's practices" (Memorandum in Opposition at 12, 16), are insufficient. North Atlantic also fails to show damages tied to Republic's conduct. As Republic points out, North Atlantic reargues its antitrust damages theory, which simply analyzes the southeast region as it would exist without Republic's exclusive programs.

Republic also contends that there is no evidence that its conduct was improper in the sense that it used wrongful means or was motivated by malice. We agree with Republic on this point as well. There is no evidence of "wrongful means" as it is defined in the relevant provisions of the Restatement (Second) of Torts, which is followed by Illinois, New York, and Kentucky courts. Section 767 of the Restatement, comment (c), provides examples of wrongful means, including physical violence, fraud, prosecution of civil or criminal suits, violation of business ethics and customs, and unlawful conduct such as antitrust violations. Moreover, § 768, comment (e), states that it is not wrongful for an actor to "use persuasion" and "exert limited economic pressure," and that an actor "may refuse to deal with the third persons in the business in which he competes with the competitor if they deal with the competitor." Thus, the incentive programs do not constitute wrongful means. North Atlantic suggests that the vacation feature of Republic's incentive programs somehow violates federal tax law, but fails to explain how or to provide any evidence.[6]

---

5. This principle is either viewed as an element of the tort or as an affirmative defense called the "competitor's privilege."

6. Even if North Atlantic could prove that Republic's programs violated tax law, it is doubtful that North Atlantic could invoke the violation in order to defeat the competitor's privilege. The tax laws are not designed to protect North Atlantic. *See Speakers of Sport,*

would satisfy those elements does appear to differ between Illinois and a number of" the nine southeastern states, but it fails to explain *how* the laws differ. (Memorandum in Opposition at 14.) In any event, as discussed *supra,* we do not believe that we should apply the law of any of the southeastern states.

North Atlantic also fails to show that Republic's actions were motivated solely (or even partly) by malice. Statements of Republic employees concerning "locking out" competition do not suffice, as they do not show that Republic's motive was to harm North Atlantic rather than to advance its own economic interests.

North Atlantic has failed to come forward with evidence that would reasonably permit the a jury to find in its favor on Count IX. Therefore, summary judgment for Republic is appropriate.

## CONCLUSION

Republic's motion for summary judgment on Count IX of North Atlantic's counterclaim is granted.

The only claim that remains to be tried is Republic's Lanham Act claim (Count V of the Second Amended Complaint), on which we previously ruled that Republic could obtain only equitable relief if successful.

*Inc. v. ProServ., Inc.,* 178 F.3d 862, 867 (7th Cir.1999) ("Invoking the concept of 'wrongful by reason of ... an established standard of a trade or profession,' Speakers points to a rule of major league baseball forbidding-players' agents to compete by means of misrepresenta- tions. The rule is designed to protect the players, rather than their agents, so that even if it established a norm enforceable by law Speakers would not be entitled to invoke it; it is not a rule designed for Speakers' protec- tion.").