**ADP, Inc. v E. Armada Inc.**

2025 NY Slip Op 30607(U)

February 21, 2025

Supreme Court, New York County

Docket Number: Index No. 654192/2024

Judge: Anar Rathod Patel

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 45

------------------------------------------------------------------------X

ADP, INC.,

          Plaintiff,

     - v -

E. ARMADA INC., GMC CAPITAL
MANAGEMENT CORP., QUALITY MULTI
SERVICES INC., QUALITY PROFESSIONAL
SERVICES INC., GUILLERMO MANUEL
CONCEPCION, ANTHONY MANUEL
CONCEPCION, ESTEPHANY REYES, ANIBELCA
RAMIREZ, ABC COMPANIES, JOHN DOES

          Defendants.

------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 654192/2024 |
| **MOTION DATES** | 12/02/2024, 12/03/2024 |
| **MOTION SEQ. NOS.** | 003, 004 |

**DECISION + ORDER ON MOTIONS**

**HON. ANAR RATHOD PATEL**:

  The following e-filed documents, listed by NYSCEF document number (Motion 003) 52–57, 65–68, 90 were read on this motion to/for <u>DISMISSAL</u>.

  The following e-filed documents, listed by NYSCEF document number (Motion 004) 58–61, 69–72, 91 were read on this motion to/for <u>DISMISSAL</u>.

  This matter arises from Defendants' alleged unlawful concerted actions to defraud Plaintiff and breach the provisions of the Payroll Services Conversion Agreement dated March 31, 2021 ("the CBA").  NYSCEF Doc. No. 50 at ¶ 1 (Am. Compl.).[1]  Plaintiff ADP, Inc. ("ADP" or "Plaintiff") is a Delaware corporation with its principal place of business in Roseland, New Jersey. *Id.* at ¶ 16.  Defendants E. Armada Inc. ("Armada") and GMC Capital Management Corp. ("GMC") are accounting services providers incorporated in New York. *Id.* at ¶¶ 17, 19.  Armada voluntarily dissolved on September 27, 2022. *Id.* at ¶ 18.  Defendants Guillermo Manuel Concepcion ("Guillermo") and Anthony Manuel Concepcion ("Anthony") (collectively, with Defendants Armada and GMC, the "New York Defendants") were owners and operators of Armada and are residents of New York. *Id.* at ¶¶ 21–22.  Guillermo was an officer of Defendant GMC. *Id.*

---

[1] The Court cites to Plaintiff's Amended Complaint filed at NYSCEF Doc. No. 50.  Defendants refiled the Amended Complaint with each subsequent motion (NYSCEF Doc. Nos. 54, 61), and Defendants' filings appear to mirror the Amended Complaint such that additional citations are redundant.

654192/2024   ADP, INC. vs. E. ARMADA INC. ET AL           Page 1 of 18
Motion Nos.  003 and 004

1 of 18

Defendants Quality Professional Services Inc. ("QPS") and Quality Multi Services ("QMS") are accounting services providers incorporated in New Jersey. *Id.* at ¶¶ 32, 34. Plaintiff refers to Defendant "QMS" as "d/b/a and/or alter ego of QPS," but Plaintiff registered QMS and QPS as separate entities in its databases. *Id.* at ¶ 34. Defendant Estephany Reyes ("Reyes") "holds herself out as the owner" of QPS and is a resident of New Jersey. *Id.* at ¶ 35. Defendant Anibelca Ramirez ("Ramirez") (collectively, with Defendants Reyes, and QPS, the "New Jersey Defendants") is "the true owner and operator of QPS" and a resident of New Jersey. *Id.* at ¶ 36.

## Relevant Factual[2] and Procedural History

Defendants GMC, QMS, and QPS were registered participants in Plaintiff's referral programs and received referral fees when they referred clients to ADP. *Id.* at ¶ 56. Plaintiff's On-Line Referral Rewards Program (the "Referral Program") requires parties to agree to its terms and conditions. *Id.* at ¶¶ 57, 59–60. Through this referral program, parties offered their respective client bases to Plaintiff for acquisition. *Id.* at ¶ 76. When acquiring a payroll client base, such as here, Plaintiff obtains the exclusive right to convert the entire payroll and related processing client base of the seller under the CBA. *Id.* As consideration, Plaintiff pays the seller a fee based on the anticipated yearly revenue of the clients successfully converted to Plaintiff's payroll client base multiplied by a factor determined by Plaintiff ("CBA Multiplier"). *Id.* at ¶¶ 76, 78. The amount of the CBA Multiplier depends on the size of the seller's client base—the larger the client base, the higher the CBA Multiplier. *Id.* at ¶ 79.

Between 2016 and 2021, QMS referred over 115 clients to Plaintiff, for which it received referral fees. *Id.* at ¶ 61. During the same time, QPS also participated in the same program, referred clients to Plaintiff, and received referral fees. *Id.* at ¶ 62.

In connection with a client's enrollment for the payroll service, ADP and the respective clients execute a purchase order, designating an individual as their primary point of contact for ADP to communicate with regarding payroll services. *Id.* at ¶¶ 69–70. Clients can also designate a second point of contact. *Id.* at ¶ 70. Typically, clients assign an in-house representative, who is familiar with the client's payroll data. *Id.* at ¶ 71. For the 115 referrals made by QMS, Defendants Ramirez and Reyes were designated as either the primary or secondary point of contact for a majority of their referred clients, respectively. *Id.* at ¶¶ 72–73.

Before October 2020, Ramirez inquired of Plaintiff's Florida representative, Non-Party Lee Wheaton ("Wheaton"), whether Plaintiff would acquire the New Jersey Defendants' payroll client base. *Id.* at ¶ 75. During the negotiation process, Ramirez learned about the CBA and its exclusion provision, *id.* at ¶ 82, which states:

> iii. Inclusions and Exclusions from the Actual Purchase Price. Notwithstanding anything to the contrary herein, in no event shall Seller be paid for any Client for whom ADP has previously paid Seller, whether such Client was paid as part of a referral or previous purchase and sale agreement between the parties.

---

[2] The facts are taken from the Amended Complaint and are accepted as true for the purposes of the Motions to Dismiss.

654192/2024  ADP, INC. vs. E. ARMADA INC. ET AL
Motion Nos.  003 and 004

Page 2 of 18

2 of 18

*Id.* at ¶ 81. As the New Jersey Defendants previously referred clients, they would not receive fees for their reacquisition as per the exclusion provision. *Id.* at ¶ 83. Allegedly to avoid application of the Exclusion Provision, Ramirez intended for the New York Defendants to sell the New Jersey Defendants' prior referral clients to ADP on the New Jersey Defendants' behalf. *Id.* at ¶ 87.

In or around October 2020, Ramirez began terminating client accounts previously referred to Plaintiff from Plaintiff's purview. *Id.* at ¶ 97. From October to November 2020, Ramirez terminated approximately 46 clients, explaining that these clients were using another payroll system. *Id.* at ¶ 98.

In or around late 2020, Ramirez contacted Guillermo to present Ramirez's alleged plot. *Id.* at ¶ 89. Armada would pretend it acquired Defendants QPS and QMS' client bases and sell them to Plaintiff pursuant to the CBA. *Id.* at ¶¶ 91–92. The New Jersey Defendants and New York Defendants would then split fees received from the sale. *Id.* ¶ at 93. After the full payment from Plaintiff, Guillermo would retire and sell Armada's client base to Ramirez to refer them to another payroll provider, thereby collecting additional fees. *Id.* at ¶ 94.

Also in or around late 2020, Guillermo, on behalf of Armada, approached Plaintiff to inquire whether Plaintiff would acquire Armada's payroll client base, which consisted of 99 unidentified clients. *Id.* at ¶¶ 109–10. In or about November 2020, Armada ceased negotiations with Plaintiff. *Id.* at ¶ 111.

During Ramirez's interactions with Plaintiff—prior to 2016—Ramirez became friendly with Wheaton. *Id.* at ¶¶ 64–65. Ramirez occasionally spoke with Wheaton about Ramirez's daughters, Reyes, and Non-Party Angela Concepcion. *Id.* at ¶¶ 66–68. Ramirez also introduced Wheaton to her ex-husband, Guillermo, and informed Wheaton that they had a child together. *Id.* at ¶¶ 41, 68.

On or about January 28, 2021, Wheaton offered to pay Ramirez 1.4x the estimated annual revenue of all the clients that ADP successfully converted from the New Jersey Defendants' client base. *Id.* at ¶ 101. Ramirez informed Wheaton that she would discuss it with "Manny," allegedly a moniker for Guillermo. *Id.* at ¶ 102. In February 2021, Ramirez sent a message to Wheaton stating that she spoke to Guillermo and would call later the same day. *Id.* at ¶ 103. Around this time, Wheaton discovered that Defendants Ramirez and Reyes had terminated several clients. *Id.* at ¶ 104. In response to Wheaton's inquiry about the termination, Ramirez informed her that clients were no longer using ADP's payroll system and that she was no longer interested in the acquisition. *Id.* at ¶¶ 105–06.

In March 2021, Guillermo, on behalf of Armada, negotiated with Plaintiff's New York representatives regarding the terms of a CBA. *Id.* at ¶ 112. Guillermo informed Plaintiff's representatives that he had a client base of 152 clients that he sought to sell to Plaintiff. *Id.* at ¶ 113. Plaintiff's New York representatives offered to purchase the clients with a CBA Multiplier of 2.4x. *Id.* at ¶ 120. On March 31, 2021, ADP and Defendants Armada and Anthony executed the CBA. *Id.* at ¶ 116. Approximately 55 of the 152 clients sold by Armada were previously referred to Plaintiff by the New Jersey Defendants, but were subsequently terminated, allegedly to

**654192/2024 ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos. 003 and 004**

**Page 3 of 18**

3 of 18

[* 3]

circumvent the Exclusion Provision. *Id.* at ¶¶ 122–24. Moreover, two of the 55 clients were already processing payrolls with Plaintiff, and QPS had referred previously 20 of the 152 clients. *Id.* at ¶¶ 125–26. On April 24, 2021, Ramirez terminated those clients in separate e-mails, stating, "'[p]lease terminate the account ASAP we are using another payroll provider.'" *Id.* at ¶ 128.

Plaintiff alleges that during the routine process of acquisition, it is common for clients in acquisition to have been prior ADP clients, even recent ones, and therefore, Plaintiff did not identify anything suspicious in acquiring prior clients. *Id.* at ¶¶ 136–38. But unlike in such situations, the 75 clients would have been excluded from the CBA but for Defendants' fraudulent concealment. *Id.* at ¶ 130. To conceal the fraud, Plaintiff alleges that the New Jersey Defendants assigned Reyes as the primary payroll contact for a vast majority of the clients on the purchase orders signed under the CBA instead of Ramirez. *Id.* at ¶¶ 145, 147. In ADP's system, Ramirez was registered as a representative of QMS, and Reyes was registered as a representative of QPS. *Id.* at ¶ 149. Plaintiff's system did not raise red flags because the original referrals reflected Ramirez as the primary payroll contact while the subsequent CBA purchase order named Reyes. *Id.* at ¶ 151. Only Wheaton had knowledge of the relationship between the Defendants. *Id.* at ¶ 152. Plaintiff's New York team did not know: (1) that Defendants Ramirez and Reyes were mother and daughter; (2) that Defendants Ramirez and Guillermo were married and had a child together; and (3) that Ramirez previously offered to sell her client base to Wheaton in Florida. *Id.* at ¶¶ 39, 41, 167, 172. Accordingly, Plaintiff's New York team was not suspicious when Guillermo offered to sell Armada's client base, which included clients previously referred by the New Jersey Defendants. *Id.* at ¶ 168.

On April 5, 2021, ADP paid Armada the "down payment" of $260,449.25 pursuant to the CBA. *Id.* at ¶ 179. Shortly thereafter, ADP began engaging Armada's payroll client base. *Id.* at ¶ 180. Of the 152 total clients, ADP successfully signed 113, and 90 of them were deemed "converted."[3] *Id.* at ¶ 183. In total, ADP paid Armada $727,927.84 in connection with the payroll acquisition. *Id.* at ¶ 185. Of the 90 successfully converted clients, approximately 56 were clients that the New Jersey Defendants previously referred and had received referral fees from Plaintiff. *Id.* at ¶¶ 186, 188. In total, Plaintiff paid Armada $497,907.49 in connection with the acquisition of at least 56 prior referral clients of the New Jersey Defendants. *Id.* at ¶ 190. Plaintiff alleges that these 56 overlapped clients should have been excluded pursuant to the Exclusion Provision. *Id.* at ¶ 191.[4]

ADP alleges that CBA's non-solicitation provision provides:

> Non-Solicitation of Converted Clients. From the Effective Date until five (5) years after the Final Conversion Date or the life of the Converted Client, whichever is longer, the Seller agrees that it shall not, directly or indirectly, solicit or refer any Converted Client to any other vendor of payroll services (and/or related payroll tax services), and/or any vendor of any software, systems or documentation on, through, or by which such payroll services

---

[3] Signed clients are not considered "converted" until they have met the retention period of 90 days. *Id.* at ¶ 23.

[4] Plaintiff does not explain the discrepancy in the number of overlapped clients (*i.e.*, 55 or 56 clients). *See* Am. Compl. at ¶¶ 124, 191.

**654192/2024   ADP, INC. vs. E. ARMADA INC. ET AL**                                                **Page 4 of 18**
**Motion Nos.   003 and 004**

4 of 18

[* 4]

(and/or related payroll tax services) could be performed, or otherwise intentionally interfere with or interrupt ADP's payroll services relationships with the Converted Clients.

*Id.* at ¶ 195. Plaintiff alleges that the CBA's non-solicitation provision bound Defendant Anthony, but that Defendants caused a sizable portion of the converted clients to stop using Plaintiff's payroll system.[5] *Id.* at ¶¶ 199–200.

After Armada was dissolved on September 27, 2022, Defendants Ramirez and Reyes contacted the converted clients and instructed them to stop processing payroll with Plaintiff. *Id.* at ¶¶ 201–202. In or about December 2022, Reyes and/or other representatives confirmed the termination of the 15 converted clients. *Id.* at ¶ 204. The terminations were coded in the system as "H – Refused to Provide Reason," but Reyes later stated that they switched payroll providers. *Id.* at ¶ 205. In January 2023, Ramirez terminated approximately 37 converted clients, mostly in one day. *Id.* at ¶ 206. Plaintiff alleges that an average retention rate is more than two years, but because the New Jersey Defendants convinced the clients to leave ADP, a significant portion of the converted clients left within two years of the acquisition. *Id.* at ¶¶ 207–09.

On August 16, 2024, Plaintiff commenced the present action by filing the Summons and Complaint. NYSCEF Doc. No. 1 (Summons and Compl.). The Complaint alleged five causes of action: (1) breach of contract against Defendants Armada and Anthony; (2) fraud against all Defendants; (3) tortious interference with contractual relations against the New Jersey Defendants and Guillermo; (4) tortious interference with economic advantage against all Defendants; and (5) civil conspiracy against all Defendants. *Id.*

On September 24, 2024, Defendants Armada, GMC, Guillermo, and Anthony moved to dismiss the Complaint in its entirety (Mot. Seq. No. 002). NYSCEF Doc. No. 25. On September 26, 2024, the motion to dismiss was denied without prejudice for failure to comply with Commercial Division Rule 24 and this Part's Practices and Procedures at Section VIII.B. NYSCEF Doc. No. 34.

On October 15, 2024, the parties appeared for a preliminary conference. NYSCEF Doc. No. 48. On October 22, 2024, Plaintiff filed the Amended Complaint. NYSCEF Doc. No. 54. On December 2, 2024, the New York Defendants moved to dismiss the Amended Complaint in its entirety with prejudice. NYSCEF Doc. Nos. 52–57 (Mot. Seq. No. 003). On December 3, 2024, Defendants QPS, Ramirez, and Reyes moved to dismiss the Amended Complaint. NYSCEF Doc. Nos. 58–61 (Mot. Seq. No. 004). On January 3, 2025, Plaintiff filed their oppositions to Defendants' respective motions. NYSCEF Doc. Nos. 65-68, 69-72. All the moving Defendants filed their respective replies on January 17, 2025. NYSCEF Doc. Nos. 90–91.

---

[5] The Amended Complaint does not specifically allege any of Defendant Anthony's activity that led to the breach of the provision, instead relying on allegations against the Defendants generally.

**654192/2024  ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos.  003 and 004**

**Page 5 of 18**

## Legal Analysis

Defendants seek to dismiss the Amended Complaint pursuant to CPLR § 3211(a)(7) for failure to state a cause of action. NYSCEF Doc. No. 57 at 8 (N.Y. Def.'s Mem. of Law (Mot. Seq. No. 003)); NYSCEF Doc. No. 60 at 8 (N.J. Def.'s Mem. of Law (Mot. Seq. No. 004)). "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that … (7) the pleading fails to state a cause of action." CPLR § 3211(a)(7). On a motion to dismiss brought pursuant to CPLR § 3211(a)(7), "pleadings are to be afforded a liberal construction, allegations are taken as true, the plaintiff is afforded every possible inference, and a determination is made only as to whether the facts as alleged fit within any cognizable legal theory." *CSC Holdings, LLC v. Samsung Elecs. Am., Inc.*, 146 N.Y.S.3d 17, 18 (2021) (internal citations omitted). Nevertheless, "[d]ismissal of the complaint is warranted if the [movant] fails to assert facts in support of an element of the claim, or if the factual allegations and inferences drawn from them do not allow for an enforceable right of recovery." *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1162 (N.Y. 2017) (internal citations omitted). Courts will grant a motion to dismiss where a movant states a cognizable cause of action but fails to assert a material fact necessary to meet an element of the claim. *See, e.g., Arnon Ltd v. Beierwaltes*, 3 N.Y.S.3d 31, 33 (2015).

### A. Fraud Against All Defendants (Count II)

"To allege a cause of action based on fraud, plaintiff must assert 'a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" *Connaughton*, 75 N.E.3d at 1163 (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370 (N.Y. 1996)). "The essential constitutents [*sic*] of the action are tersely and adequately stated as representation, falsity, scienter, deception, and injury." *Ochs v. Woods*, 117 N.E. 305, 306 (N.Y. 1917). "A false representation does not, without more, give rise to a right of action, either at law or in equity, in favor of the person to whom it is addressed. To give rise, under any circumstances, to a cause of action, either in law or equity, reliance on the false representation must result in injury." *Sager v. Friedman*, 1 N.E.2d 971, 973 (N.Y. 1936). Defendants argue that: (1) Plaintiff's reliance on any representations by Defendants was unreasonable; (2) Plaintiff failed to allege any duty owed by Defendants to correct any material omissions; (3) the Amended Complaint fails to meet the heightened pleading standard of CPLR § 3016(b); (4) Plaintiff's claim for fraud is duplicative of its breach of contract claim; (5) Plaintiff's allegations do not justify punitive damages; and (6) the CBA bars recovery of consequential damages. NYSCEF Doc. No. 57 at 18–26; NYSCEF Doc. No. 60 at 18–26.

#### i.     Reasonable Reliance

Plaintiff did not reasonably rely on any material representations or omissions by Defendants. To survive a motion to dismiss, "[p]laintiff must show not only that he actually relied on the misrepresentations, but also that such reliance was reasonable. Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations." *Stuart Silver Associates, Inc. v. Baco Dev. Corp.*, 665 N.Y.S.2d 415, 417 (1st Dept. 1997); *see*

654192/2024   ADP, INC. vs. E. ARMADA INC. ET AL                                      Page 6 of 18
Motion Nos.  003 and 004

6 of 18

*also Johnson v. Cestone*, 80 N.Y.S.3d 15 (1st Dept. 2018); *Estrada v. Metro. Prop. Group, Inc.*, 973 N.Y.S.2d 147 (1st Dept. 2013). Plaintiff argues that: (1) the issue was not that the clients had been previously referred, but that the clients were referred by the New Jersey Defendants and were not owned by the New York Defendants; and (2) Defendants evaded detection of their plot by contacting ADP's New York representatives rather than Wheaton. NYSCEF Doc. No. 65 at 19–20.[6] However, the Amended Complaint evidences that Plaintiff maintained a database of parties previously referred by the New Jersey Defendants. NYSCEF Doc. No. 50 at 76–81. Had Plaintiff searched its own database, Plaintiff would have determined that the referred clients were owned and previously referred by the New Jersey Defendants, negating Plaintiff's argument.[7] *Id.* Further, as Defendants argue, had the familial relationships between the parties been material, Plaintiff still failed to question the New York Defendants as to such connections. NYSCEF Doc. No. 57 at 20–21; NYSCEF Doc. No. 60 at 20. Thus, even if Plaintiff relied on the omissions or misrepresentations of Defendants, such reliance would be unreasonable as the exercise of ordinary diligence would manifest the falsity of the misrepresentations.

Plaintiff's theory is largely based on the familial relationship between Defendants Guillermo and Ramirez. *See generally* NYSCEF Doc. No. 50. Plaintiff posits that, because the parties were previously married and share a child, the parties necessarily concocted a scheme to defraud Plaintiff. Plaintiff provides thin factual allegations to support this theory other than asserting that Ramirez, at one point, represented she would speak with Guillermo prior to signing a CBA with Wheaton.[8] *Id.* at ¶ 102. Plaintiff further speculates as to when the alleged scheme was devised, how and when the alleged scheme was communicated, and when, if ever, the other alleged participants agreed in said scheme, all with little-to-no factual grounding. *See generally* NYSCEF Doc. No. 50. Defendants' familial relationships, absent additional factual support, are insufficient to allege a common scheme among the Defendants.

### ii. No Duty Owed to Correct Omissions

Defendants argue that they were not under a duty to correct omissions. "A cause of action for fraudulent concealment requires… an allegation that the defendant had a duty to disclose material information and that it failed to do so." *P.T. Bank C. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 250 (1st Dept. 2003). "Generally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 235 (1st Dept. 2011). Plaintiff does not allege any special relationship with or fiduciary duty owed by Defendants; however, citing *Barrett v. Freifeld*, Plaintiff argues that Defendants had superior knowledge of their interpersonal relationships and of

---

[6] Plaintiff's Memorandum of Law in Opposition to Motion Sequence 003 (NYSCEF Doc. No. 65) was refiled, with no changes, as Plaintiff's Memorandum of Law in Opposition to Motion Sequence 004 (NYSCEF Doc. No. 69). Any citations to NYSCEF Doc. No. 65 are identical to NYSCEF Doc. No. 69.

[7] Plaintiff's contention that Defendants circumvented Plaintiff's failsafe(s) by approaching Plaintiff's New York representatives rather than Wheaton is similarly unavailing. According to Plaintiff's own website, Plaintiff is a Fortune 500 corporation with services offered in over 140 countries specializing in Human Resources and Payroll. It is unreasonable that Plaintiff would not utilize a centralized database, cloud-based storage, and/or the internet to effectively communicate across offices.

[8] Further, various allegations posited by Plaintiff to support its theory of conspiracy and fraud are inconsistent. For instance, Plaintiff alleges that Defendants conspired to defraud Plaintiff prior to Wheaton making an offer to Ramirez. NYSCEF Doc. No. 50 at ¶¶ 89, 101.

654192/2024   ADP, INC. vs. E. ARMADA INC. ET AL                                   Page 7 of 18
Motion Nos.  003 and 004

7 of 18

the previous attempt to sell the client base to Wheaton—which should have been disclosed. 908 N.Y.S.2d 736 (2d Dept. 2010).

Conversely, Plaintiff repeatedly admits that at least one of its employees, Wheaton, had knowledge of both facts. *See, e.g.*, NYSCEF Doc. No. 65 at 19. "[T]he acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010).[9] Here, the Amended Complaint admits that Wheaton learned of the Defendants' interpersonal relationships through the course of their professional dealings. NYSCEF Doc. No. 50 at ¶¶ 64–68. Despite that knowledge, Wheaton failed to disclose to Plaintiff, Wheaton's principal, that multiple members of the referral program were interconnected and that the New Jersey Defendants had approached her to sell their client base without success. Nonetheless, Wheaton's knowledge is imputed to Plaintiff. Wheaton's failure to disclose this information cannot be imputed to Defendants as part of a scheme to defraud.

Plaintiff argues that its fraud claim is also based on Defendants Armada and Anthony, through the CBA, representing that they had "unencumbered ownership of the Client Base and full authority to sell the right to convert such Client Base." NYSCEF Doc. No. 65 at 17. "To maintain an action based on fraudulent representations, whether it be for the rescission of a contract or, as here, in tort for damages, it is sufficient to show that the defendant knowingly uttered a falsehood. . . ." *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 151 N.E.2d 833, 835 (N.Y. 1958). The Amended Complaint alleges that, "[p]ursuant to the plan, Armada would pretend as though it acquired [the New Jersey Defendants'] clients." NYSCEF Doc. No. 50 at ¶ 245. Notably absent from Plaintiff's allegations is any allegation that this was how the purported scheme was executed. Plaintiff does not allege that the New Jersey Defendants, rather than Armada, retained ownership of the client base at the time of the relevant CBA. The Amended Complaint repeatedly admits that, after the CBA, Armada sold its client base to one of the New Jersey Defendants. *See, e.g., id*. at ¶ 13. It would not be reasonable for this Court to infer that, because Armada did not own the New Jersey Defendants' client base prior to the CBA, Armada was never sold or given the client base around the time of the CBA. Accordingly, Plaintiff does not sufficiently allege that Anthony misrepresented a material fact.

### iii.    Heightened Pleading Standard Pursuant to CPLR § 3016(b)

Defendants argue that the Amended Complaint does not attribute specific actions to the respective Defendants to meet the heightened pleading standard. "Where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." CPLR § 3016(b). "Although there is certainly no requirement of 'unassailable proof' at the pleading stage, the complaint must 'allege the basic facts to establish the elements of the cause of action.'" *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009) (quoting *Pludeman v. N. Leasing Sys., Inc.*, 890 N.E.2d 184 (N.Y. 2008)). "A claim involving multiple defendants must make specific and separate allegations for each defendant." *CIFG Assur. N. Am., Inc. v. Bank of*

_____

[9] "In general, the imputation of knowledge from agent to principal flows naturally from the assumption that the agent will live up to the duty to act in the principal's interest in light of all the pertinent information he has acquired." *Marine Midland Bank v. John E. Russo Produce Co., Inc.*, 405 N.E.2d 205, 211 (N.Y. 1980).

654192/2024  ADP, INC. vs. E. ARMADA INC. ET AL                                    Page 8 of 18
Motion Nos.  003 and 004

8 of 18

[* 8]

*Am., N.A.*, 980 N.Y.S.2d 275 (N.Y. Cnty. Sup. Ct. 2013). Plaintiff argues that it has met the heightened pleading standard by alleging: (1) that a familial relationship existed between the New Jersey and New York Defendants; (2) that Defendants had unique knowledge of the relationship, which was material to the CBA; (3) that Defendants failed to disclose that relationship and then perpetrated the alleged fraud; and (4) that, due to Defendants' relationships, Defendants perpetuated a scheme. NYSCEF Doc. No. 65 at 20–21. Plaintiff, again, ignores the fact that by way of its Florida representative, ADP had knowledge of the familial relationship. Further, the Court struggles to find that an allegation alone of a familial relationship, or in fact any relationship, between parties is material such that the failure to disclose the same gives rise to a claim for fraud.[10] Accordingly, Plaintiff has not met the heightened pleading standard of CPLR § 3016(b).

### iv. Fraud Claim is Duplicative

"It has long been the rule that parties may not assert fraud claims seeking damages that are duplicative of those recoverable on a cause of action for breach of contract." *MBIA Ins. Corp. v. Credit Suisse Securities (USA) LLC*, 84 N.Y.S.3d 157, 161 (1st Dept. 2018). "[A] fraud claim is not stated by allegations that simply duplicate, in the facts alleged and damages sought, a claim for breach of contract, enhanced only by conclusory allegations that the pleader's adversary made a promise while harboring the concealed intent not to perform it." *Cronos Group Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 186 (1st Dept. 2017). "In the context of a contract case, the pleadings must allege misrepresentations of present fact, not merely misrepresentations of future intent to perform under the contract, in order to present a viable claim that is not duplicative of a breach of contract claim." *Wyle Inc. v. ITT Corp.*, 13 N.Y.S.3d 375, 376 (1st Dept. 2015). Defendants argue that Plaintiff's fraud claim is duplicative of its breach of contract claim as the fraud allegations arise from the same set of allegations. NYSCEF Doc. No. 57 at 24–25; NYSCEF Doc. No. 60 at 24–25. Plaintiff raises two claims for its breach of contract claim: (1) that Defendants breached the CBA by selling Armada's clients to an accounting services provider; and (2) that Defendants breached the CBA by selling to Plaintiff clients that were previously referred by New Jersey Defendants. NYSCEF Doc. No. 65 at 21–22. Plaintiff's latter argument is unconvincing. *See infra* section E. Nonetheless, Plaintiff's remaining breach of contract theory is unique from the present fraud claim as it relies on Defendants' subsequent sale of the Armada client base, while the fraud claim relates to the alleged misrepresentation of ownership. Accordingly, Plaintiff's fraud claim is not duplicative of its breach of contract claim.

### v. Punitive Damages

Defendants argue that Plaintiff is not entitled to recover punitive damages based on Plaintiff's fraud allegations. "Punitive damages are not available 'in the ordinary fraud and deceit case. . . .'" *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 924 N.Y.S.2d 376, 377 (1st Dept. 2011) (quoting *Walker v. Sheldon,* 10 N.Y.2d 401, 405 (1961)). However, "[p]unitive damages are permitted when the defendant's wrongdoing is not simply intentional but 'evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Ross v. Louise Wise Services, Inc.*, 868 N.E.2d 189, 196 (N.Y.

---

[10] Applying Plaintiff's logic in another setting, any party related to an attorney would be required to disclose said relationship whenever that party sought to enter into a contract, as that relationship could affect performance on the contract.

654192/2024   ADP, INC. vs. E. ARMADA INC. ET AL
Motion Nos.   003 and 004

Page 9 of 18

2007) (quoting *Walker v. Sheldon*, 179 N.E.2d 497 (N.Y. 1961)). "The misconduct must be exceptional, 'as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness ... or has engaged in outrageous or oppressive intentional misconduct or with reckless or wanton disregard of safety or rights.'" *Id.* (quoting *Sharapata v. Town of Islip*, 437 N.E.2d 1104 (N.Y. 1982)). Plaintiff alleges that Defendants fraudulently omitted the nature of their relationships and that the New Jersey Defendants had previously sought to sell the same clients to Plaintiff when negotiating with Plaintiff's representatives. Defendants' actions, as alleged by the Amended Complaint, do not "'imply a criminal indifference to civil obligations.'" Plaintiff does not dispute this. *See* NYSCEF Doc. No. 65. Accordingly, Plaintiff's request for punitive damages is inadequately plead.

### vi. Consequential Damages

Defendants Armada and Anthony argue that the CBA bars recovery of consequential damages. Section six of the CBA states, in relevant part, "NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOST PROFITS ARISING OUT OF OR RELATING TO THIS AGREEMENT EVEN IF THE PARTY HAS BEEN INFORMED IN ADVANCE OF THE POSSIBILITY OF SUCH DAMAGES." NYSCEF Doc. No. 5 at 13. Plaintiff does not dispute this term. As such, Plaintiff's request for consequential damages is barred by the CBA.

### B. Tortious Interference with a Contract against Defendants QMS, GMC, Guillermo, and the New Jersey Defendants (Count III)

Defendants argue that: (1) Plaintiff has not sufficiently pled an underlying breach of contract claim; (2) Plaintiff does not sufficiently allege causation; (3) Plaintiff fails to allege actions taken by Defendants, let alone actions with tortious intent; (4) any alleged interference was incidental to a legitimate business purpose; and (5) as to the New York Defendants only, Plaintiff fails to establish that the New York Defendants acted beyond the scope of their employment or were motivated by personal gain. NYSCEF Doc. No. 57 at 27–30; 60 at 27–29.

To state a claim for tortious interference with contractual relations, the plaintiff must allege "(1) the existence of a valid contract…; (2) defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach of that contract; and (4) damages." *Burrowes v. Combs*, 808 N.Y.S.2d 50, 53 (1st Dept. 2006). "'[P]ersuasion to breach alone, as by an offer of better terms,' is sufficient to constitute procurement of a breach of contract." *Nostalgic Partners, LLC v. New York Yankees Partn.*, 168 N.Y.S.3d 444, 448 (1st Dept. 2022) (quoting *Guard–Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980)).

Plaintiff raises separate arguments as to each Defendant to support its allegation of tortious interference with a contract. NYSCEF Doc. No. 65 at 23–24. Plaintiff argues that Guillermo was: (1) aware that the clients sold to Plaintiff were "subject to restrictive covenants within the CBA;" and that (2) Guillermo violated the non-solicit and/or non-compete provisions of the CBA by reselling Armada's clients to the New Jersey Defendants. NYSCEF Doc. No. 65 at 23. Plaintiff argues that the New Jersey Defendants tortiously interfered with the CBA by soliciting clients in violation of the non-solicitation provision. NYSCEF Doc. No. 65 at 23–24.

**654192/2024 ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos. 003 and 004**

**Page 10 of 18**

10 of 18

### i.  Underlying Breach of Contract

Defendants asserts that Plaintiff cannot maintain a claim for tortious interference with contractual relations without also alleging breach of contract against Defendants Armada and Anthony in the same pleading.  NYSCEF Doc. No. 57 at 28; NYSCEF Doc. No. 60 at 27–28.  As this Court has previously held, the absence of an underlying breach of contract claim alone is not sufficient to dismiss a claim alleging tortious interference with a contract.  *See Acrisure, LLC v. Woodruff-Sawyer & Co.*, 84 Misc. 3d 1262(A) (N.Y. Cnty. Sup. Ct. 2024) (holding that Plaintiff need not bring an underlying breach of contract claim so long as Plaintiff otherwise alleges the requisite elements).  As discussed *infra*, Plaintiff has sufficiently alleged the required elements to establish breach of contract.

### ii.  Causation

Defendants argue that the allegations that Defendants either concealed certain information prior to the CBA or solicited clients after the CBA could not have caused Armada to breach the CBA.  To survive dismissal, a plaintiff alleging tortious interference of contractual relations "must allege that the contract would not have been breached 'but for' defendant's conduct."  *Burrowes*, 808 N.Y.S.2d at 53.  Plaintiff argues that Guillermo re-sold Armada's clients and that Guillermo's sale constituted interference with the contract.  NYSCEF Doc. No. 65 at 23.  Plaintiff argues that the New Jersey Defendants interfered with the non-solicitation provision by soliciting the clients away from Plaintiff after the sale and terminating the previously converted clients.  NYSCEF Doc. No. 65 at 23–24.

Plaintiff's allegations are sufficient to establish causation as to Guillermo.  "Although on a motion to dismiss the allegations in a complaint should be construed liberally, to avoid dismissal of a tortious interference with contract claim a plaintiff must support his claim with more than mere speculation."  *Burrowes*, 808 N.Y.S.2d at 53.  "[A]ll 'but for' causes bear some connection to the outcome even if all do not lead to legal liability."  *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 482 (N.Y. 2017).  Defendant Anthony may have breached the CBA by selling the Armada client base.  *See infra* section E.  Further, the Amended Complaint alleges that Guillermo informed Plaintiff that he had sold the client base.  NYSCEF Doc. No. 50 at ¶ 211.  Plaintiff later alleges that Guillermo did not sell Armada, but instead dissolved Armada and sold the client base to the New Jersey Defendants.  *Id.* at ¶ 214.  Taking these allegations together, Plaintiff has set forth sufficient facts to allege that Guillermo was the but for cause of the breach of the CBA.

However, Plaintiff merely speculates that the New Jersey Defendants called the members of the client base and caused them to terminate their contracts with Plaintiff.  *Id.* at ¶ 276.  Plaintiff purchased the right to solicit 152 clients, and allege that, subsequently, 71 of these clients were solicited away by the New Jersey Defendants.  NYSCEF Doc. No. 50 at 79–81 (Ex. 6).  As Plaintiff states, it is not uncommon for clients to terminate their contract with Plaintiff.  *See id.* at ¶ 138 ("ADP routinely acquires clients that, at one point or another, were prior ADP clients and routinely acquires clients that it previously paid referral fees for.").  While one could speculate that such a

**654192/2024  ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos.  003 and 004**

**Page 11 of 18**

departure was part of a larger scheme to defraud, it is equally likely that these 71 clients chose to take their business elsewhere.[11]

As such, Plaintiff's Amended Complaint relies on speculation to establish that "but for" Defendants' actions, these parties would not have terminated their contracts. Such speculation is insufficient to survive a motion to dismiss.

### iii. Absence of Action by Defendants

Defendants renew their argument that Plaintiff has failed to allege any specific actions taken by Guillermo. NYSCEF Doc. No. 57 at 29; NYSCEF Doc. No. 60 at 29. Plaintiff argues that Guillermo, while knowing the provisions of the CBA: (1) participated in the sale of Defendants' client bases; and (2) subsequently admitted to reselling Defendants' client bases to the New Jersey Defendants. Taking these allegations as true, it cannot be said that Guillermo did not, in some capacity, act. Accordingly, Defendants' argument is unconvincing.

### iv. Economic Interest Defense

Defendants argue that because Guillermo is alleged to be the owner of Armada, Plaintiff's cause of action must fail because Guillermo was acting to protect his economic interest.[12] NYSCEF Doc. No. 57 at 29; NYSCEF Doc. No. 60 at 29. "One who has a financial interest in the business of another possesses a privilege to interfere with the contract between the other and someone else if his purpose is to protect his own interests and if he does not employ improper means." *Morrison v. Frank*, 81 N.Y.S.2d 743, 744 (N.Y. Cnty. Sup. Ct. 1948). "[E]conomic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality." *Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996). The economic interest defense requires that a party have "acted to protect its own legal or financial stake in the breaching party's business." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007). Here, Plaintiff alleges that Defendants Guillermo and Anthony were either actual or "*de facto*" owners of Defendants GMC and Armada. NYSCEF Doc. No. 57 at 29; NYSCEF Doc. No. 60 at 29. Accordingly, Defendants Guillermo and Anthony could interfere with the contract so long as such interference was not wrongful. The legal sale or liquidation of a company's assets is not inherently improper. Accordingly, Plaintiff's claims are self-defeating.

### v. Defendant Guillermo Cannot be held Liable as a Corporate Officer

New York Defendants argue that Defendant Guillermo cannot be held liable as an officer of Defendant Armada, pursuant to Plaintiff's allegations, absent some showing that Defendant Guillermo personally benefitted from Defendant Armada's actions. NYSCEF Doc. No. 57 at 28–29. To allege tortious interference with contract against a corporate officer, Plaintiff must show "that the acts of the defendant corporate officers which resulted in the tortious interference with contract either were beyond the scope of their employment or, if not, were motivated by their

---

[11] Plaintiff fails to account for other theories, such as another competitor advertising to Plaintiff's client base directly with better offers.

[12] The New Jersey Defendants maintain the same arguments, but fail to argue the same on their own behalf. NYSCEF Doc. No. 60 at 29.

**654192/2024  ADP, INC. vs. E. ARMADA INC. ET AL**                                           **Page 12 of 18**
**Motion Nos.  003 and 004**

12 of 18

[* 12]

personal gain, as distinguished from gain for the corporation. We have construed personal gain in terms that the challenged acts were undertaken 'with malice and were calculated to impair the plaintiff's business for the personal profit of the [individual] defendant.'" *Petkanas v. Kooyman*, 759 N.Y.S.2d 1, 2 (1st Dept. 2003) (quoting *Joan Hansen & Co., Inc. v. Everlast World's Boxing H.Q. Corp.*, 744 N.Y.S.2d 384 (1st Dept. 2002)). Plaintiff asserts that the New York Defendants argue that Guillermo was not an officer of Armada. NYSCEF Doc. No. 65 at 24. Indeed, Defendants must either: (1) admit Guillermo was a corporate officer of Armada; or (2) forgo the present argument as inapplicable. Defendants cannot have it both ways. Accordingly, due to Defendants' possible admission, the present argument is academic and unavailing.

### C. Tortious Interference with Economic Advantage against all Defendants (Count IV)

To state a claim for tortious interference with prospective business relations, the plaintiff, "must allege that: (a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship." *Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 29 (2009) (citing *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103–04 (2004); *NBT Bancorp v. Fleet/Norstar Fin. Group*, 664 N.E.2d 492 (N.Y. 1996); *Hoesten v. Best*, 34 A.D.3d 143, 159 (2006)).

Defendants do not dispute that Plaintiff had business relations with third parties. However, Defendants argue that Plaintiff has failed to sufficiently allege tortious interference with economic advantage, also known as tortious interference with prospective business relations, because: (1) Plaintiff fails to allege, with specificity, which prospective business relations Defendants interfered with; and (2) Plaintiff fails to allege that Defendants acted solely out of malice.

####   i.   Lack of Prospective Business Relations

Defendants first argue that Plaintiff has failed to specify which clients Plaintiff had business relations with, then, in their reply, argue further that the parties specified by Plaintiff had existing contracts rendering the present cause of action inappropriate. NYSCEF Doc. No. 57 at 31; NYSCEF Doc. No. 60 at 30–31; NYSCEF Doc. No. 90 at 16–17. "[W]here there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior. Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant." *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 664 N.E.2d at 496 (emphasis added and internal citations omitted). Here, Plaintiff admits that Defendants "cancelled the converted clients' contracts with ADP. . . ." NYSCEF Doc. No. 65 at 26. Accordingly, by Plaintiff's own admission, the present cause of action is inappropriate as Defendants did not interfere with prospective business relations, but rather, with contracts.

####   ii.   Motivation

Even if Plaintiff could allege tortious interference with prospective business relations where a contract exists, Plaintiff has failed to allege Defendants' motive. Absent a "relation of

**654192/2024  ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos.  003 and 004**

**Page 13 of 18**

13 of 18

confidence" between Plaintiff and Defendant, Plaintiff must allege that Defendant's intentional interference was either: (1) through wrongful means; or (2) solely motivated by an intent to harm Plaintiff.[13] *Carvel Corp.*, 818 N.E.2d at 1100; *A.S. Rampell, Inc. v. Hyster Co.*, 144 N.E.2d 371 (N.Y. 1957). Actions taken with the dual intention of harming the plaintiff while benefitting the defendant are inadequate to plead tortious interference with business relations. *See Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 30 (1st Dept. 2009) ("Plaintiff has not alleged any facts suggesting that defendants violated the law or undertook actions with the sole purpose of harming him; indeed, by plaintiff's own theory of the case, defendants acted with the intent of benefitting themselves.").

Once again, Plaintiff's filings betray them. As to the New York Defendants, the Amended Complaint alleges that the New York Defendants were in the business of acquiring and selling smaller firms. NYSCEF Doc. No. 50 at ¶ 24. Accordingly, by purchasing the New Jersey Defendants' client base and then re-selling it, the New York Defendants were benefitting themselves by acting in a way consistent with their business model. As to the New Jersey Defendants, Plaintiff, as noted *supra*, states that the contracts had been terminated "to the benefit of the [New Jersey Defendants]." NYSCEF Doc. No. 50 at ¶ 303.[14] As such, Plaintiff cannot allege that Defendants acted solely out of malice.

Accordingly, Plaintiff has failed to sufficiently plead tortious interference with economic advantage.

### D. Civil Conspiracy against all Defendants (Count V)

Defendants argue that Plaintiff's cause of action for civil conspiracy fails due to Plaintiff's failure to sufficiently plead an underlying tort. NYSCEF Doc. No. 57 at 32; NYSCEF Doc. No. 60 at 31–32. "New York does not recognize an independent cause of action for conspiracy to commit a civil tort." *Abacus F.S.B. v. Lim*, 905 N.Y.S.2d 585, 588 (1st Dept. 2010). "Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986). "Therefore, under New York Law, to establish a claim of civil conspiracy, the plaintiff 'must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" *Abacus F.S.B.*, 905 N.Y.S.2d at 588 (1st Dept. 2010) (quoting *World Wrestling Fedn. Ent., Inc. v. Bozell*, 142 F. Supp. 2d 514 (S.D.N.Y. 2001)). "[A] cause of action sounding in civil conspiracy cannot stand alone, but stands or falls with the underlying torts." *Nissan Motor Acceptance Corp. v. Scialpi*, 944 N.Y.S.2d 160, 162 (2d Dept. 2012). As noted, *supra*, the Amended Complaint fails to sufficiently plead: (1) fraud; (2) tortious interference with a contract; and (3) tortious

---

[13] "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *Guard-Life Corp.*, 50 N.Y.2d at 191. Plaintiff does not allege that Defendants interfered with Plaintiff's business relations through wrongful means.

[14] Furthermore, considering the financial benefit in the sale of client bases to Plaintiff and Plaintiff's apparent inability to distinguish between pre-existing and new clients, the parties clearly benefited from the sale, interference, and then resale of Defendants' respective client bases.

**654192/2024 ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos. 003 and 004**

**Page 14 of 18**

interference with business relations. Plaintiff does not allege any other tort. Accordingly, Plaintiff's civil conspiracy claim necessarily fails.[15]

### E. Breach of Contract against Defendants Armada and Anthony (Count I)

Plaintiff alleges that Defendants Armada and Anthony breached the non-compete and non-solicitation provisions of the CBA by selling their respective client bases to the New Jersey Defendants after entering the CBA. NYSCEF Doc. No. 50, ¶¶ 222–40. To state a claim for breach of contract, the plaintiff, "usually must allege that: (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (internal citations omitted).

Plaintiff and Defendants Armada and Anthony do not dispute the existence of the CBA. *See* NYSCEF Doc. Nos. 50, 57, 60. Further, Defendants do not dispute that Plaintiff paid Armada $727,927.84 in connection with the payroll acquisition. NYSCEF Doc. No. 50 at ¶ 185. Accordingly, the first, second, and fourth elements have been sufficiently established.

Further, Defendants do not dispute that Defendant Anthony is bound by the CBA. "A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its term." *Excel Graphics Techs., Inc. v. CFG/AGSCB 75 Ninth Ave., L.L.C.*, 767 N.Y.S.2d 99, 102 (1st Dept. 2003). To bind Defendant Anthony to the cause of action, Plaintiff points to Section 8(d) of the CBA which states:

> Seller's principal, as well as that person primarily responsible for running Seller's day-to-day payroll processing, shall sign this Agreement in their individual capacities, and each hereby agrees to be bound individually to the same extent as the Seller by the provisions of this Section 8 and to the provisions of Section 4 and 7.

*Id.* at ¶¶ 198–199.

As to the third element, Plaintiff alleges that Defendants Armada and Anthony breached the five-year non-compete and non-solicitation provisions by: (1) selling Armada's payroll client base to the New Jersey Defendants; and (2) misrepresenting that Defendants Armada and Anthony owned clients that were actually owned by the New Jersey Defendants. NYSCEF Doc. No. 65 at 21–22. Defendants dispute that their respective actions constitute breach(es) of the CBA.

Preliminarily, the Amended Complaint fails to sufficiently allege that the New York Defendants actually misrepresented their ownership of the client base. *Supra* section A. ii. Accordingly, Plaintiff's second argument is unconvincing. The Court now looks to whether Plaintiff sufficiently pleads that Defendants Armada and Anthony breached the non-compete and

---

[15] Due to the dismissal of Counts II, IV, and V, no causes of action remain against Guillermo and GMC. As such, the New York Defendants' remaining arguments regarding the lack of allegations against Guillermo, individually, and GMC are academic.

654192/2024   ADP, INC. vs. E. ARMADA INC. ET AL
Motion Nos.  003 and 004

Page 15 of 18

15 of 18

non-solicitation provisions by selling Armada's client base to the New Jersey Defendants. The non-compete provision of the CBA states, in relevant part:

> Except as otherwise agreed in writing between the Seller and ADP, from the Effective Date and for five (5) years following the Final Conversion Date (the "Non-Competition Period"), the Seller agrees that it shall not, directly or indirectly:
>
> > i. provide payroll services (and/or related payroll tax services), including reprocessing or wholesaling activities, to any third person or entity whatsoever (whether or not affiliated with Seller) but excluding After-the-Fact reconciliation services, Or
> >
> > ii. provide, sell, license, or otherwise transfer any software, systems or documentation on, through, or by which any payroll services (and/or related payroll tax services) can be performed, to any third person or entity whatsoever (whether or not affiliated with the Seller), or
> >
> > iii. solicit or refer any of the Client Base, or any clients of the Seller whatsoever, to any other vendor of payroll services (and/or related payroll tax services), and/or any vendor of any software, systems or documentation on, through, or by which such payroll services (and/or related payroll tax services) could be performed, or otherwise intentionally interfere with or interrupt ADP's payroll services relationships with the Converted Clients or any other of its clients.
>
> The restrictions set forth in this Section 8.a. shall not prohibit Seller from providing support or assistance to its accounting clients that utilize software which includes payroll functionality, or from referring its accounting clients to use an accounting software that may include payroll functionality (i.e., QuickBooks), or from providing after-the-fact payroll and/or related payroll tax services.

*Id.* at ¶ 194. The non-solicitation provision states, in relevant part:

> From the Effective Date until five (5) years after the Final Conversion Date or the life of the Converted Client, whichever is longer, the Seller agrees that it shall not, directly or indirectly, solicit or refer any Converted Client to any other vendor of payroll services (and/or related payroll tax services), and/or any vendor of any software, systems or documentation on, through, or by which such payroll services (and/or related payroll tax services) could be performed, or otherwise intentionally interfere with or interrupt ADP's payroll services relationships with the Converted Clients.

**654192/2024  ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos.  003 and 004**

**Page 16 of 18**

16 of 18

[* 16]

*Id.* at ¶ 195.

Defendants Armada and Anthony argue that Plaintiff has failed to allege: (1) that the inclusion of previously referred clients in the sale violates those provisions of the CBA; and (2) sufficient facts showing that Defendants solicited the client base to terminate their respective contracts with Plaintiff. NYSCEF Doc. No. 57 at 26–27. Plaintiff has failed to sufficiently allege any portion of the claimed scheme, thus Defendants Armada and Anthony's second argument is credited. *Supra* Section B.ii.

However, Plaintiff contends that Defendants Armada and Anthony violated the CBA, not only through their inclusion of previously referred clients or direct solicitation, but through dissolving Armada and reselling the client base to the New Jersey Defendants. NYSCEF Doc. No. 65 at 21–22. The relevant portions of the non-compete provision of the CBA bars Defendants Armada and Anthony from referring "any of the Client Base, or any clients of [Defendants Armada and Anthony] to any other vendor of payroll services (and/or related payroll tax services). . . ." NYSCEF Doc. No. 50 at ¶ 194. Similarly, the relevant portion of the non-solicitation provision states that Defendants Armada and Anthony "shall not, directly or indirectly, solicit or refer any Converted Client to any other vendor of payroll services (and/or related payroll tax services)." *Id.* at ¶ 195. The Amended Complaint alleges that Defendants Armada, QPS, and QMS are all vendors of accounting services. *Id.* at ¶¶ 17, 32, 34. Further, Plaintiff alleges that Defendants Armada and Anthony sold the Armada's client base to the New Jersey Defendants after Defendants Armada and Anthony entered into the CBA. *Id.* at ¶ 211.

Thus, Plaintiff has sufficiently alleged that Defendants Armada and Anthony, as signatories to the CBA, breached the non-compete and non-solicitation provisions.

## **Conclusion**

Based on the foregoing, Plaintiff has failed to sufficiently allege: fraud against all Defendants (Count II); tortious interference with a contract against Defendants QMS, GMC, Guillermo, and the New Jersey Defendants (Count III); tortious interference with economic advantage against all Defendants (Count IV); and civil conspiracy against all Defendants (Count V). Plaintiff's claim for breach of contract against Defendants Armada and Anthony (Count I) has been sufficiently pled to survive the present motion.

As such, it is hereby

**ORDERED** that Defendants' Motions to Dismiss pursuant to CPLR § 3211(a)(7) is GRANTED as to Count II (fraud), Count III (tortious interference with a contract), Count IV (tortious interference with economic advantage), and Count V (civil conspiracy) of the Amended Complaint; and it is further

**ORDERED** that Plaintiff's requests for consequential and punitive damages are stricken from the Amended Complaint; and it is further

**654192/2024 ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos. 003 and 004**

**Page 17 of 18**

17 of 18

**ORDERED** that Defendants' Motions to Dismiss pursuant to CPLR § 3211(a)(7) is DENIED as to Count I (breach of contract) against Defendants E. Armada Inc. and Anthony Manuel Concepcion of the Amended Complaint; and it is further

**ORDERED** that the action is severed and continued against the remaining Defendants E. Armada Inc. and Anthony Manuel Concepcion as to Count I only; and it is further

**ORDERED** that the caption be amended to reflect the dismissal and that all future papers filed with the Court bear the amended caption; and it is further

**ORDERED** that counsel for the moving party shall serve a copy of this Decision and Order with notice of entry upon the Clerk of the Court within five (5) days of the date of this Decision and Order. Upon proper service, the Clerk is directed to update their records to reflect the change in caption; and it is further

**ORDERED** that Defendants E. Armada Inc. and Anthony Manuel Concepcion shall file their answer to the Amended Complaint's Count I within twenty (20) days of the e-filed date of this Decision and Order.

The foregoing constitutes the Decision and Order of the Court.

| **February 21, 2025** | | | | | |
| **DATE** | | | | **ANAR RATHOD PATEL, A.J.S.C.** | |
| **CHECK ONE:** | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER | |
| **APPLICATION:** | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | | |
| **CHECK IF APPROPRIATE:** | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE | |

**654192/2024  ADP, INC. vs. E. ARMADA INC. ET AL**
**Motion Nos. 003 and 004**                                      **Page 18 of 18**

18 of 18